394 S.E.2d 58

**Teresa Diane BAILEY, Administratrix of the Estate of Keith O'Brine Bailey, Deceased,**

v.

**Harriet BLACK and Orvis Black, Individually and doing business as Stoney Brook Inn Association**

v.

**Sylvia M. SELLS.**

No. 19356.

Supreme Court of Appeals of West Virginia.

May 17, 1990.

Anthony R. Veneri, Randall L. Veneri, Princeton, for Teresa Diane Bailey.

John F. Parkulo, Anderson & Sines, Beckley, for Harriet and Orvis Black.

Robert S. Baker, Beckley, for Sylvia M. Sells.

NEELY, Chief Justice:

On the evening of 16 October 1986, Sylvia Sells, age 42, began drinking beer at about 5:30 p.m. at the Stoney Brook Inn in Raleigh County, West Virginia. The Inn is an unincorporated private club, owned and operated by Harriet and Orvis Black. The Blacks are licensed by this State to sell alcohol to the Inn's patrons. At the Inn, Ms. Sells was served several drinks, including, the plaintiff alleges, several drinks too many. About 10:20 p.m., after getting into a heated argument with other patrons at the Inn, the Blacks ejected Ms. Sells from the Inn. She then drove home. Her blood alcohol content was later determined to be .187 percent, well above the level that constitutes *prima facie* evidence of drunk driving in this State, .10 percent. *W.Va. Code*, 17C–5–8 [1983].

On Route 19 in Raleigh County, about a mile from the Stoney Brook Inn, Ms. Sells's car crossed the center line of the highway, striking head-on the car driven by Keith O'Brine Bailey, age 26. Mr. Bailey was killed, and Ms. Sells was seriously injured. Mr. Bailey's widow and executrix, Teresa Diane Bailey, brought a wrongful death action in the Circuit Court of Raleigh County. She named as defendants Harriet and Orvis Black, individually and as owners of the Stoney Brook Inn. The Blacks then filed a third-party indemnity complaint against Ms. Sells. Ms. Sells counterclaimed against the Blacks to recover damages for her own injuries. Holding that the Blacks, as a matter of law, were not liable either to Mrs. Bailey or to Ms. Sells, the trial court entered summary judgment in favor of the defendants in Mrs. Bailey's claim against the Blacks and in Ms. Sells's counter-claim against the Blacks. Mrs. Bailey and Ms. Sells appeal to this Court the rulings dismissing the Blacks. We now reverse both judgments and remand the case to the circuit court.

I.

The central issue in this case is whether someone licensed to sell alcohol in this state, who sells to an intoxicated person in violation of law, is liable in tort for damages suffered by others as a result of the illegal sale.

*W.Va. Code*, 55–7–9 [1923], provides:

Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of damages.

*W.Va. Code*, 60–7–12 [1986], provides in pertinent part:

(a) It shall be unlawful for any licensee, or agent, employee or member thereof, on such licensee's premises to:

... (4) Sell, give away, or permit the sale of, gift to, or the procurement of any alcoholic liquors, for or to any mental incompetent, or for a person who is physically incapacitated due to consumption of alcoholic liquor or the use of drugs;

... (c) Any person who violates any of the foregoing provisions shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail for a period not to exceed one year, or by both fine and imprisonment.

■ Reading these statutes together, giving plain meaning to the language, we must conclude that there exists a civil cause of action against a licensee for personal injuries caused by the licensee's selling alcohol to anyone who is "physically incapacitated" by drinking.

Many states have specific statutes, known as Dram Shop Acts, providing for civil liability of negligent sellers of alcohol. In some states, civil liability has been based on common-law negligence principles. *See, e.g., Kelly v. Gwinnell,* 96 N.J. 538, 476 A.2d 1219 (1984). In yet other states, the

violation of alcoholic beverage control statutes has been held to be *prima facie* negligence. Two cases on all fours with this one are *Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982), and *Ono v. Applegate*, 62 Haw. 131, 612 P.2d 533 (1980). *See generally* Comment, "Liability of Commercial Vendors, Employers, and Social Hosts for Torts of the Intoxicated," 19 *Wake Forest L.Rev.* 1013 (1983).

The existence of a statutory duty and a tort action for its violation are clear enough. The more difficult issues in this case are the scope of the duty and the degree of fault that will result in liability.

## II.

■ On its face, *Code* 60–7–12 [1986] seems to call for strict liability. However, the duty is violated only when the person consuming alcohol is "physically incapacitated." We interpret that language to mean that the seller or its agents must be capable of knowing that the buyer is drunk. The standard is that the buyer exhibited some physical sign of drunkenness, such that reasonably prudent serving personnel could have known that the buyer was drunk. The most obvious case is physical staggering. Slurring of words, loud or inappropriate speech, bleary eyes, shaky hands, and general slovenliness are other signs a server should look for. The sheer amount of alcohol a patron has been served may make it apparent to the server that the drinker has had too much. Thus, there would be no liability for serving one drink to a drunk person who displays no signs of drunkenness, but multiple drinks served over a comparatively short period might lead to liability in itself, because the server should realize that the buyer is getting drunk.

## III.

■ Who may sue for a violation of *Code* 60–7–12(a)(4) [1986]? The scope of a statutory duty may be put this way: Is the plaintiff in the class of people the statute was intended to protect, and did the plaintiff suffer the sort of harm the statute meant to prevent? As the U.S. Supreme Court has stated, "It fairly may be said that the nature of the duty imposed by a statute and the benefits resulting from its performance usually determine what persons are entitled to invoke its protection." *Fairport R.R. Co. v. Meredith*, 292 U.S. 589, 596, 54 S.Ct. 826, 829, 78 L.Ed. 1446 (1934). The scope of the duty is thus a question of legislative intent, but in the case of *Code* 60–7–12(a)(4) [1986], that intent is not clearly expressed. The *Code* section mentions only "a person who is physically incapacitated." It thus seems to flow from the plain meaning of the words that the incapacitated person himself is meant to be protected. What of third persons? *Code* 55–7–9 [1923] provides, "Any person injured by the violation of any statute" may recover damages from the offender. Thus, third parties generally may recover damages for violations of *Code* 60–7–12(a)(4) [1986].

We have held that proximate cause must be proved under *Code* 55–7–9 [1923]. *Powell v. Mitchell*, 120 W.Va. 9, 196 S.E. 153 (1938). Implied in proximate cause is the notion that the harm sued for is the type of harm the statute was meant to prevent.[1] *Norman v. Virginia–Pocahontas Coal Co.*, 68 W.Va. 405, 69 S.E. 857 (1910). Here, *Code* 60–7–12(a)(4) [1986] gives no express guidance. Experience teaches us, however, what is wrong with serving liquor to drunks. First, if the buyer is an alcoholic, the seller may be feeding his addiction,

1. For example, a liquor sale before 1 p.m. on a Sunday afternoon, in violation of *Code* 60–7–12(a)(5), would not in itself make the seller liable for a buyer's automobile accident: The prohibition is intended to protect the dignity of the Sabbath as such, not physical injury to motorists. An illustrative misapplication of the rule was *Hansen v. Kemmish*, 201 Iowa 1008, 208 N.W. 277 (1926). There was a statute in Iowa requiring farmers to fence *male* pigs, no doubt to control breeding. A motorist struck an unfenced male pig, injuring the driver. The Iowa court held, curiously, that the farmer's violation of the breeding statute was *prima facie* negligence in an action by the motorist.

which is an ongoing harm to the drunk himself. Second, any drunk person is a physical danger to himself and others. We know that drunkenness contributes to accidents of all kinds. Most disturbing of these are automobile accidents, where there is an immediate risk, to the drunk and others, of grave injury or death. If nothing else, we can be sure that automobile accidents were among the dangers present to the minds of the legislature in enacting *Code* 60–7–12(a)(4) [1986].

## IV.

We conclude that summary judgment was inappropriate as to the plaintiff's wrongful death action against the Blacks and their Stoney Brook Inn Association. As to the cross-claim against the Blacks by the defendant Sylvia Sells, the alleged drunk driver, for her own injuries, summary judgment was likewise inappropriate. An intoxicated person and a third party he injures are both in the class of people meant to be protected by *Code* 60–7–12(a)(4) [1986]. The statute creates the duty, violation of which is *prima facie* negligence. In other respects, the cause of action would proceed in the same manner as any other negligence action. Under our comparative negligence system, for example, the drunk driver's own negligence would be balanced against the negligence of the seller of the alcohol, in the drunk driver's action against the seller for injuries to herself.

For the above reasons, we reverse both judgments of the Circuit Court of Raleigh County and remand the case for further proceedings consistent with this opinion.

Reversed and Remanded.