Pam JACKSON, Individually and as
Administratrix of the Estate of James C. Jackson *v.*
CADILLAC COWBOY, INC., d/b/a Sundowners Club,
John Fontana, Billy Burns, Jr., and Regina Applegate

98-574                                          986 S.W.2d 410

Supreme Court of Arkansas
Opinion delivered March 18, 1999

*Crisp, Jordan & Boyd, L.L.P.,* by: *William D. Schubert,* for appellant.

*Dunn, Nutter, Morgan & Shaw*, by: *W. David Carter* and *Adam O Fellows*, for appellees.

R OBERT L. BROWN, Justice. This appeal brings to the forefront once again the issue of whether this court should recognize common-law liability for the negligence of vendors licensed by the state who sell alcoholic beverages to intoxicated persons who, in turn, cause injury to third persons. In our previous decisions, we have declined to establish that liability judicially, beginning with the seminal case of *Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965). The trial court, in the instant case, followed our past decisions and dismissed the complaint of the appellant, Pam Jackson, for failure to state facts upon which relief could be granted. Jackson now urges on appeal that either our decision in *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997), decides the issue concerning the validity of her claim, or, in the alternative, we should recognize a cause of action for vendors who sell alcohol to inebriated persons. We agree with Jackson that she has stated facts upon which relief may be granted, and we reverse the trial court's dismissal and remand for further proceedings.

The facts as alleged in Pam Jackson's complaint are these. On August 31 and September 1, 1994, appellee Cadillac Cowboy, Inc., and its owners through their agents and employees served alcoholic beverages at the Sundowners Club to Kevin Holliday, an adult, who they knew or should have known was extremely intoxicated and intended to drive his motor vehicle while intoxicated. At about 12:45 a.m. on September 1, 1994, a 1977 Chevrolet pickup truck driven by Holliday struck the side of the vehicle driven by James Jackson, causing it to overturn and kill Jackson. Pam Jackson, individually and as administratrix of the Estate of James Jackson, sued Cadillac Cowboy, Inc., and its owners and asserted that their conduct constituted negligence *per se* due to their violation of certain provisions of the Arkansas Alcoholic Control Act.

Cadillac Cowboy, Inc., and its owners moved to dismiss Jackson's complaint under Ark. R. Civ. P. 12(b)(6) for failure to state facts upon which relief could be granted. The trial court granted

the motion and in its order wrote that our decision in *Shannon v. Wilson, supra,* narrowly modified *Carr v. Turner, supra,* and only extended liability for the sale of alcohol to minors. The trial court concluded that in all other respects *Carr* remained intact and refused to extend *Shannon* to include sales to intoxicated adults.

Jackson first urges in her appeal that our decision in *Shannon v. Wilson, supra,* where we recognized a cause of action for the sale of alcohol to minors, also included the sale of alcohol to intoxicated persons. We disagree. The facts and decision in *Shannon* manifestly involved the sale of liquor to minors. We do agree with Jackson, however, that she has stated facts sufficient for a negligence cause of action against Cadillac Cowboy, Inc., and its owners for the sale of alcohol to an intoxicated person.

In 1965, we observed that a distinct minority of jurisdictions extended liability to vendors for sale of alcohol to minors or intoxicated persons. *See Carr v. Turner, supra.* In *Carr,* we declined for the first time to amend our common law and to judicially create a cause of action for negligence against a vendor for selling alcohol to an intoxicated person. The facts in *Carr* were similar to those in the instant case. Alcoholic drinks were sold at a club to the club's patron and co-defendant until she became visibly intoxicated. The patron left the club in her car and ran into a parked taxicab which injured the plaintiff. We held that there was no liability on the part of the club because the proximate cause of the injuries was the consumption of alcohol by the patron, not the sale of it. We further remarked on the fact that our criminal statute was not limited to the sale of alcohol to minors and intoxicated persons but also included giving away alcoholic beverages to those groups. We stated in *Carr* that, as a practical matter, we could not confine liability to vendors of alcohol as opposed to social hosts serving alcohol to guests.

In our cases since *Carr,* we have continued to decline to recognize liability for the licensed vendor who sells liquor to an inebriated person or to other high-risk groups such as minors. *See, e.g., Mann v. Orrell,* 322 Ark. 701, 912 S.W.2d 1 (1995); *Rone v. H.R. Hospitality, Inc.,* 297 Ark. 107, 759 S.W.2d 549 (1988); *First American Bank of North Little Rock v. Associated Hosts, Inc.,* 292 Ark.

445, 730 S.W.2d 496 (1987); *Yancey v. The Beverage House of Little Rock, Inc.*, 291 Ark. 217, 723 S.W.2d 826 (1987); *Milligan v. County Line Liquor, Inc.*, 289 Ark. 129, 709 S.W.2d 409 (1986). In most of these cases, we reiterated that consumption of alcohol was the proximate cause of alcohol-related injuries and repeatedly stated that if there was to be a change in our public policy for licensed vendor liability, it was for the General Assembly to decide.

■ Last year, in the case of *Shannon v. Wilson, supra,* this court noted that thirty-five years after *Carr v. Turner, supra,* the vast majority of jurisdictions now recognize vendor liability for the sale of alcohol to high-risk groups. In *Shannon,* we further recognized that the sale of alcohol to a minor that resulted in injuries was a proximate cause of those injuries. Now we are confronted with a comparable situation relating to intoxicated persons. We see no distinction between the two high-risk groups of minors and intoxicated persons when it comes to causation. Just as the sale of alcohol to a minor may be one proximate cause of resulting injury, so may such sales to those who are intoxicated. Indeed, the abundant authority from other jurisdictions that we cited in *Shannon* were cases that involved minors as well as intoxicated persons.

The question then becomes whether there is a duty of reasonable care owed by licensed vendors of alcohol to their patrons. This question, too, was answered by our decision in *Shannon v. Wilson, supra.* In 1989, the General Assembly passed Act 695, which fixed a high duty of care for all license holders who sell alcoholic beverages. This legislation was passed twenty-four years after our decision in *Carr v. Turner, supra.* Act 695 stated in pertinent part:

> (a) It is the specifically declared policy of the General Assembly of the State of Arkansas that all licenses issued to establishments for the sale or dispensing of alcoholic beverages are privilege licenses, and the holder of such privilege license is to be held to a high duty of care in the operation of the licensed establishment.

> (b) It is the duty of every holder of an alcoholic beverage permit issued by the State of Arkansas to operate the business wherein alcoholic beverages are sold or dispensed in a manner

which is in the public interest, and does not endanger the public health, welfare, or safety. Failure to maintain this duty of care shall be a violation of this act and grounds for administrative sanctions being taken against the holder of such permit or permits.

1989 Ark. Acts 695 (codified at Ark. Code Ann. § 3-3-218(a) & (b) (Repl. 1996)). In *Shannon v. Wilson, supra,* we relied on Act 695 coupled with statutes prohibiting the sale of alcohol to minors to establish a duty of care. We said:

> We conclude that the statutes establishing affirmative obligations upon license holders authorized to sell alcohol and the statute classifying the criminal act of selling or furnishing alcohol to minors for monetary gain a felony create a duty for licensees to exercise a high standard of care for the protection of minors. A breach of this duty can lead to a suit for negligence.

*Shannon,* 329 Ark. at 159-160, 947 S.W.2d at 357. The same reasoning applies to this case in establishing a duty of care for sales by licensed vendors to intoxicated persons.

█  Among the prohibited practices in the Arkansas Alcoholic Beverage Control Act is the sale of alcohol "to a habitual drunkard or an intoxicated person," which is a misdemeanor offense. *See* Ark. Code Ann. § 3-3-209 (Repl. 1996). When we read this statute in conjunction with Act 695, it is clear to us, as it was in *Shannon v. Wilson, supra,* that the General Assembly has spoken on this point and has established a high duty of care on the part of holders of alcohol licenses, which includes the duty not to sell alcohol to high-risk groups, including intoxicated persons. Stated a different way, a duty of care exists on the part of licensed alcohol vendors not to endanger the public health, welfare, or safety, and that duty is breached when vendors sell alcohol to intoxicated persons in violation of § 3-3-209. Although these ABC statutes do not specifically provide for civil liability, a duty of care and the attendant standard of care may be found in a statute that is silent on civil liability. *See* RESTATEMENT (SECOND) OF TORTS § 286 Comt. d (1965).

█ █  That is precisely what is alleged in Jackson's complaint in the case before us. When considering a motion to dismiss on Rule 12(b)(6) grounds, we treat the allegations made in

the complaint as true and view them in the light most favorable to the plaintiff. *See Mann v. Orrell, supra; Perrodin v. Rooker*, 322 Ark. 117, 908 S.W.2d 85 (1995). This means that we must accept as true the allegation that Cadillac Cowboy's employees or agents served Holliday alcohol when he was extremely intoxicated, knowing that he intended to drive his motor vehicle while intoxicated. We conclude that Jackson states the case correctly when she maintains that serving alcohol to Holliday, an intoxicated person, knowing that he intended to drive his motor vehicle, breached the high duty of care set by the General Assembly for licensed vendors of alcohol. The risk of harm to the public at large by an intoxicated driver is not only foreseeable but beyond dispute.

As we have already noted, the vast majority of jurisdictions in this country now have established vendor liability for sales to high-risk groups either by statute or judicial opinion. Indeed, a majority of states has done so by basing this liability on the duty of care established in alcoholic beverage control statutes. The first jurisdiction to premise liability on the duty of care set forth in local alcoholic beverage control statutes was New Jersey. *See Rappaport v. Nichols*, 156 A.2d 1 (N.J. 1959). According to our research, at least thirty-two jurisdictions have allowed civil causes of action based on the duty of care established in ABC statutes. *See Nazareno v. Urie*, 638 P.2d 671 (Alaska 1981); *Ontiveros v. Borak*, 667 P.2d 200 (Ariz. 1983); *Largo Corp. v. Crespin*, 727 P.2d 1098 (Colo. 1986); *Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268 (D.C. 1987); *Davis v. Shiappacossee*, 155 So.2d 365 (Fla. 1963); *Ono v. Applegate*, 612 P.2d 533 (Haw. 1980); *Fischer v. Cooper*, 775 P.2d 1216 (Idaho 1989); *Elder v. Fisher*, 217 N.E.2d 847 (Ind. 1966); *Haafke v. Mitchell*, 347 N.W.2d 381 (Iowa 1984); *Pike v. George*, 434 S.W.2d 626 (Ky. Ct. App. 1968); *Garcia v. Jennings*, 427 So.2d 1329 (La. Ct. App. 1983); *Klingerman v. SOL Corp. of Maine*, 505 A.2d 474 (Me. 1986) (now abrogated by Me. Rev. Stat. Ann. tit. 28-A, § 2511); *Michnik-Zilberman v. Gordon's Liquor, Inc.*, 453 N.E.2d 430 (Mass. 1983); *Trail v. Christian*, 213 N.W.2d 618 (Minn. 1973); *Munford, Inc. v. Peterson*, 368 So.2d 213 (Miss. 1979); *Sampson v. W.F. Enters., Inc.*, 611 S.W.2d 333 (Mo. Ct. App. 1981); *Jenning v. Skyline Bar*, 726 P.2d 326 (Mont.

1965); *Ramsey v. Anctil*, 211 A.2d 900 (N.H. 1965); *Rappaport v. Nichols*, 156 A.2d 1 (N.J. 1959); *Lopez v. Maez*, 651 P.2d 1269 (N.M. 1982); *Hutchens v. Hankins*, 303 S.E.2d 584 (N.C. Ct. App. 1983); *Mason v. Roberts*, 294 N.E.2d 884 (Ohio 1973); *Brigance v. Velvet Dove Restaurant*, 725 P.2d 300 (Okla. 1986); *Davis v. Billy's Con-Teena, Inc.*, 587 P.2d 75 (Or. 1978); *Jardine v. Upper Darby Lodge No. 1973, Inc.*, 198 A.2d 550 (Pa. 1964); *Christianson v. Campbell*, 328 S.E.2d 351 (S.C. Ct. App. 1985); *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547 (Tenn. 1981); *Poole v. El Chico Corp.*, 713 S.W.2d 955 (Tex. Ct. App. 1986); *Purchase v. Meyer*, 737 P.2d 661 (Wash. 1987); *Bailey v. Black*, 394 S.E.2d 58 (W. Va. 1990); *Sorenson v. Jarvis*, 350 N.W.2d 108 (Wis. 1984); *McClellan v. Tottenhoff*, 666 P.2d 408 (Wyo. 1983).

The rationale for the approach taken by these jurisdictions, and now by this court, is best summarized by the North Carolina Court of Appeals:

> Most state and federal courts that have considered these issues since 1960 have reevaluated and rejected as patently unsound the rule that a seller cannot be held liable for furnishing alcoholic beverages to an intoxicated or minor patron who injures a third person on the grounds that sale or service is causally remote from the subsequent injurious conduct of the patron. A substantial majority have decided that the furnishing of alcoholic beverages may be a proximate cause of such injuries and that liability may be imposed upon the vendor in favor of the injured third person, and nearly every court recognizing such a claim for relief against a licensed vendor has premised the action for negligence upon the violation of statutes imposing a duty upon licensees to refrain from selling or serving alcoholic beverages to a visibly intoxicated person.

*Hutchens v. Hankins*, 303 S.E.2d 584, 589 (N.C. Ct. App. 1983), *petition denied*, 309 N.C. 191, 305 S.E.2d 734 (1983).[1]

---

[1] There are nine jurisdictions that refuse to impose a civil cause of action based on ABC statutes and state as their reason that these statutes are meant to regulate an industry and not create civil liability. *See* NICHOLS, DRINKING/DRIVING LITIGATION, § 37:07, n. 9.

We have no doubt that the high duty of care established by Act 695 was essentially for regulatory purposes, but it also is legislative recognition of the vital and weighty responsibility that our state places on licensed alcohol vendors. We emphasize the point that this high duty of care fixed by the General Assembly is on licensed vendors of alcohol, and we view the liability as confined to this group by Act 695. Though we said in *Carr v. Turner, supra,* that we could not see how liability could be confined to vendors as opposed to social hosts, this was before the enactment of Act 695 establishing the duty of care for licensed vendors. Now it is clear under *Shannon v. Wilson, supra,* as well as our decision today that the liability does not extend to social hosts.

To date, there are six states that impose no vendor liability for the sale of alcohol to high-risk groups, either judicially or by statute — Nevada, Nebraska, Delaware, Virginia, Kansas, and Maryland. Our neighboring states impose vendor liability in a variety of ways:

- Missouri has addressed the issue by statute. Mo. Ann. St. § 537.053 (West 1988) imposes limited liability against licensed vendors of alcohol by the drink for consumption on the premises. A cause of action exists only if (1) the vendor is convicted of or receives a suspended sentence for selling alcohol to a minor or obviously intoxicated person, and (2) that sale is the proximate cause of the injury or death sustained by that person. Prior to the enactment of the statute, Missouri judicially recognized a common-law cause of action. *See Sampson v. W.F. Enters.,* 611 S.W.2d 33 (Mo. Ct. App. 1981).

- Oklahoma is a common-law jurisdiction. One who furnishes liquor may be liable for damages for serving an obviously intoxicated person from which it can be determined that an unreasonable risk of harm to others was created by the impaired ability to operate a motor vehicle. *See Mansfield v. Circle K. Corp.,* 877 P.2d 1130 (Okla. 1994); *Brigance v. Velvet Dove Restaurant, Inc.,* 725 P.2d 300 (Okla. 1986).

- Tennessee has enacted Tenn. Code Ann. § 57-10-101 (Repl. 1989). This statute declares that consumption is the proximate cause and not the furnishing of alcohol. But § 57-10-102 sets up a standard of proof notwithstanding § 57-10-

101: A jury of twelve must ascertain beyond a reasonable doubt that the sale of alcohol to a person known to be under 21 or obviously intoxicated caused the injury as a direct result of the consumption of the alcohol.

- Texas has addressed the issue by statute. Tex. Alco. Bev. Code Ann. § 2.02 (West 1995) imposes liability for providing, selling, or serving an alcoholic beverage to an obviously intoxicated person to the extent that he presented a clear danger to himself and others and if the intoxication is the proximate cause of the injury.

- Louisiana has the most restrictive statute. La. Rev. Stat. Ann. § 9:2800.1 (West 1997) immunizes alcoholic beverage vendors who serve alcohol to persons who are legally of age. In instances where the statute does not apply, such as where the consumer is under age 21, the courts resort to general negligence principles. *See Godfrey v. Boston Old Colony Ins. Co.*, 718 So.2d 441 (La. Ct. App. 1998).

- Mississippi has addressed the issue by statute. Miss. Code Ann. § 67-3-73 (1991) limits liability to those cases in which licensed alcohol vendors furnish alcohol to visibly intoxicated patrons or in cases where a person causes the consumption of alcoholic beverages by force or false representations that the beverage contains no alcohol. Mississippi courts have also recognized a common-law cause of action. *See Bryant v. Alpha Entertainment Corp.*, 508 So.2d 1094 (Miss. 1987).

In sum, the complaint by Jackson is that the employees of the Sundowners Club knowingly served an intoxicated person, Holliday, knowing he would drive while intoxicated. Jackson argues, in effect, that serving alcohol to Holliday, knowing that he would drive, was much like loading a pistol. Under these circumstances, we will not immunize licensed vendors of alcohol to engage in activity which is in blatant disregard of the standard of care set forth in Act 695 and § 3-3-209, especially since we declined to do so under comparable circumstances pertaining to alcohol sales to minors in *Shannon v. Wilson, supra*. Instead, we now consider the question of whether the duty of care fixed by statute for ABC license holders has been breached to be an issue for the fact-finder, and we hold that evidence of the sale of alcohol

by a licensed vendor to an intoxicated person is some evidence of negligence. We overrule *Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965), and its progeny to the extent those cases are inconsistent with this opinion.

The dissent spends considerable time complaining that the majority opinion fails to give standards or guidelines to prove who is an intoxicated person. Of course, the proof required would be the same as would be necessary to enforce § 3-3-209. But, suffice it to say, the appellees do not argue the vagueness of that statute or its failure to provide standards and that was not an issue before the trial court or on appeal.

Reversed and remanded.

GLAZE, J., concurs.

ARNOLD, C.J., CORBIN and THORNTON, JJ., dissent.

TOM GLAZE, Justice, concurring. Before the case of *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997), this court under its common-law authority held that no business licensed to sell alcohol was liable for any accident and injuries following its illegal sale of liquor to a minor. Such nonliability was primarily based on the fact that Arkansas has no laws that expressly imposed civil liability on the seller, and the further rationale that it was the minor's *consumption*, not the sale, of the alcohol that was the sole proximate cause of the ensuing accident and injuries. *See, e.g., Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965). Concerning the proximate cause issue, the *Shannon* court explained and then concluded it could not find any basis for determining that the voluntary consumption by the minor was the proximate cause of the resulting damages or injuries. *Id*. at 156-158, 947 S.W.2d at 355-357. That being said, it also follows that an intoxicated patron's voluntary consumption of alcohol, illegally sold him by a licensed alcohol permit holder, is not necessarily, as a matter of law, the sole proximate cause of an accident that followed that sale. In sum, if a licensed liquor-permit holder who illegally sells alcohol to a minor can factually be found liable for injuries ensuing from the sale to a minor, that licensed holder could also be factually found liable for injuries resulting from the

illegal sale of alcohol to an intoxicated patron. To hold otherwise would render *Shannon* meaningless.

In my view, the *Shannon* decision simply recognized that this court's earlier cases offered an invalid and artificial immunity from suit to licensed alcohol permittees who had made illegal liquor sales to minors as well as to intoxicated patrons. In doing so, those earlier decisions improperly ignored or failed to discuss relevant general negligence principles. For example, where a licensed alcohol holder violates a statute and regulation by selling alcohol to an intoxicated person, such is evidence of negligence which should be considered by a jury along with other facts and circumstances in the case. AMI Civ. 3rd 601. Moreover, when the acts of two or more persons work together as proximate causes of damage to another, each of those persons may be found to be liable. In a case like the present one, both the liquor vendor's and intoxicated person's acts should be considered together when determining each person's fault. This is true regardless of the relative degree of fault between them. *See* AMI Civ. 3rd 502. Our negligence law defines proximate cause as being that cause, which "in a natural and continuous sequence, produces damage," and such a cause is usually a question for the jury.[1] AMI Civ. 3rd 501. Finally, a defendant has the burden of proof to show that following any act on his part, an event intervened (such as a person's consumption of alcohol) which in itself caused damage completely independent of the defendant's conduct. AMI Civ. 3rd 503. It seems clear to me that when alcohol is illegally sold to an intoxicated person, a fact issue, at the very least, arises as to whether the licensed liquor holder should share in having created a situation that foreseeably could have resulted in an accident and ensuing injuries.

In early cases, this court utilized its common-law authority to hold licensed liquor vendors free from liability where accidents and injuries resulted after illegal sales to minors and intoxicated patrons. However, if this court is to inject itself into these illegal

---

[1] Although proximate causation is usually a question for the jury, where reasonable minds cannot differ, a question of law is presented for determination by the court. *Wilson v. Evans*, 284 Ark. 101, 679 S.W.2d 205 (1984).

liquor-sale matters via the common law, that common-law application should include the court's adherence to general negligence principles and Arkansas's jury instructions noted above. If the court does so, a licensed liquor vendor would not as a matter of law be immune from suit as has been the result in this court's prior cases. For these added reasons, I join the majority opinion.

The majority opinion has satisfactorily and conclusively set forth the duty-of-care issue by discussing the General Assembly's statutory enactments relating to the holders of alcohol licenses. Thus, I need say no more on this point except to emphasize that it is this aspect of the case that differentiates it from the social-host situation. Suffice it to say, I agree with that distinction.

DONALD L. CORBIN, Justice, dissenting. This decision, in my estimation, is the most far-reaching judicial fiat I have seen in all of my thirty-three years' experience in the law. I dissent because I believe that the Arkansas General Assembly did not intend to create civil liability for vendors of alcoholic beverages with the passage of Act 695 of 1989, codified as Ark. Code Ann. § 3-3-218(a) and (b) (Repl. 1996). The majority holds that through section 3-3-218 the General Assembly has established "a duty of reasonable care owed by licensed vendors of alcohol to their patrons." I disagree. Section 3-3-218 provides nothing more than the grounds for administrative sanctions to be imposed upon vendors by the Alcoholic Beverage Control Board for the failure to operate their businesses in the public interest, in a manner that does not endanger the public health, safety, or welfare. This pales in comparison to the statute relied upon in *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997), that made it a felony to sell alcoholic beverages to minors.

Until the decision in *Shannon*, this court had consistently declined to recognize tort liability for vendors who sell alcoholic beverages to persons who then later cause injuries to themselves or others. When this court finally did recognize such liability in *Shannon*, it was on the basis of the strong public-policy reasons set forth by the General Assembly in prohibiting the sale of alcoholic beverages to minors. *See* Ark. Code Ann. § 3-3-202(b) (Repl. 1996). Although this court discussed the various regulatory stat-

utes, it relied primarily on the fact that the public policy against selling liquor to minors was so strong that the legislature had declared the proscribed acts to be a felony. On that basis, this court recognized a narrow exception to its long line of cases that had rejected any type of "dramshop" liability. The exception was reserved for situations where vendors knowingly sell alcoholic beverages to minors, based upon the recognition of the General Assembly that minors, as a particular class of persons, deserve added protection from the dangers of consuming alcoholic beverages. This court took great pains to particularize this public policy:

> The legislature determined that the prohibition of the selling or furnishing alcohol to minors for monetary gain was of such importance that [section 3-3-202] was amended in 1993 by Act 875 establishing the violation as a Class D felony. In the emergency clause for Act 875, the legislature made the determination that existing statutes criminalizing the sale of alcohol to minors were too lenient and thus heightened the penalty from a misdemeanor to a felony. Specifically, the legislature found, "supplying alcoholic beverages to underage persons is strictly contrary to the public policy and is detrimental to the young people of this State, and that the penalties for this conduct should be increased to deter and to punish these violations of Arkansas law and policy." 1993 Ark. Acts 875.
>
> In enacting the foregoing statutes, it is clear that the legislature determined it is the public policy of the State of Arkansas to protect minors *as a special class of citizens* from the adverse consequences of alcohol consumption. The statutes establish an affirmative duty for alcoholic beverage license holders to safeguard against minors purchasing alcohol. These statutes serve to regulate the liquor industry and to promote the safety of our citizenry as a whole. We conclude that the statutes establishing affirmative obligations upon license holders authorized to sell alcohol *and the statute classifying the criminal act of selling or furnishing alcohol to minors for monetary gain a felony create a duty for licensees to exercise a high standard of care for the protection of minors.* A breach of this duty can lead to a suit for negligence.

*Id.* at 159-60, 947 S.W.2d at 357 (emphasis added). I joined the majority in *Shannon* because I, too, believed that there are strong public-policy reasons for preventing the sale of alcoholic beverages

to minors. I cannot, however, join the majority here because I believe that it is unsound to base tort liability for vendors on nothing more than regulatory statutes that constitute "grounds for administrative sanctions." Section 3-3-218(b).

Correspondingly, the majority's conclusion is not further supported by its reliance on Ark. Code Ann. § 3-3-209 (Repl. 1996). Section 3-3-209 makes it a misdemeanor, not a felony, to "sell, give away, or dispose of intoxicating liquor to a habitual drunkard or an intoxicated person[.]" This court has consistently rejected the theory that section 3-3-209, then codified as Ark. Stat. Ann. § 48-901, was intended to change the common-law rule of nonliability. *See Milligan v. County Line Liquor, Inc.*, 289 Ark. 129, 709 S.W.2d 409 (1986); *Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965). Those particular holdings were not disturbed by the decision in *Shannon*, 329 Ark. 143, 947 S.W.2d 349.

Moreover, with the holding in this case, we are but one small step away from extending such liability to social hosts. The majority holds:

> We emphasize the point that this high duty of care fixed by the General Assembly is on licensed vendors of alcohol, and we view the liability as confined to this group by Act 695. Though we said in *Carr v. Turner, supra*, that we could not see how liability could be confined to vendors as opposed to social hosts, this was before the enactment of Act 695 establishing the duty of care for licensed vendors. Now it is clear under *Shannon v. Wilson, supra*, as well as our decision today that the liability does not extend to social hosts.

Despite its declaration to the contrary, by relying on section 3-3-209 in addition to Act 695, the majority has left wide open the possibility that tort liability may also be extended to social hosts in the future. As previously indicated, the behavior prohibited by section 3-3-209 applies to any person who sells, gives away, or otherwise disposes of alcoholic beverages to intoxicated persons. That prohibition does not, however, establish the legislature's intention to impose tort liability upon all offenders, including social hosts. This court said as much in *Carr*, 238 Ark. 889, 385 S.W.2d 656, discussing the predecessor to section 3-3-209:

In all the decisions [from other jurisdictions] the liability to the injured person fell solely upon one engaged in the sale of alcoholic beverages. [Ark. Stat. Ann. § 48-901] is not so narrow. It applies to *any person* who sells or gives away intoxicating liquor to a minor or to an inebriate. *By its terms it is equally applicable to a liquor dealer and to a host who serves cocktails in his own home.* Perhaps the legislature did not mean for the law to be so sweeping in its scope, but we must give effect to the statute as we find it.

Even if the prohibition against the sale of liquor to an intoxicated person had the comprehensive implications that the appellant attributes to it, we do not see how the impact of the statute could be confined to those who *sell* liquor, legally or illegally. The same reasoning would be applicable in the case of a person entertaining his friends in his home. He would be compelled to maintain supervision over all his guests and to refuse to serve drinks to those nearing the point of intoxication. Such a principle of liability would be more far-reaching than any decision that we have discovered. *We think it clear that the lawmakers, in enacting the statutes now on the books, have not undertaken to extend the offender's responsibility to the extreme degree now urged by the appellant. It may be that a Dramshop Act is to be desired, but such a measure should be the result of legislative action rather than of judicial interpretation.*

*Id.* at 892, 385 S.W.2d at 658 (emphasis added). In light of the plain language of section 3-3-209, it is not apparent how the majority can attempt to limit its holding to licensed vendors. There will be no logical basis to make an exception for social hosts. Necessarily, this would include the person who serves alcoholic beverages in his home to friends at social gatherings and the employer who provides alcoholic beverages at office parties.

Additionally, I take issue with the fact that the majority has offered no standard for measuring a vendor's civil liability. Rather, the holding only reflects that "the sale of alcohol by a licensed vendor to an intoxicated person is some evidence of negligence." The majority offers no guidance as to who qualifies as an "intoxicated person." Without such guidance, the standard is entirely subjective and will thus be difficult to apply. What may appear to one person to be signs of intoxication may not seem so to another person. We all recognize the "falling down drunk,"

but how will we detect that marginal individual? Visible signs of intoxication include not only persons who sway or cannot otherwise stand up, but also persons who have red, watery eyes. Of course, red, watery eyes may be the result of other causes, not just intoxication. Clearly, the question of who is intoxicated becomes illusive. Furthermore, police officers, who have received extensive training in the detection of intoxicated persons, often cannot agree whether someone is intoxicated. Without specific standards, guidelines, and training procedures established by our legislature, it is beyond me how we can expect waitresses and bartenders, not to mention social hosts, to measure a person's intoxication level with any amount of certainty.

In contrast, the standard set forth in *Shannon* creating a cause of action against a vendor who "knowingly sells alcohol to a minor," was taken from the language of section 3-3-202(b)(1). The standard is objective in that it requires a vendor to request proper identification from purchasers before selling alcoholic beverages to them. This standard would not require vendors to receive any specialized training in the recognition of signs of intoxication. Additionally, the trier-of-fact is not left to speculate whether the vendor's actions were sufficient under the circumstances; rather, the only issue to decide is whether the vendor obtained proper age identification prior to the sale.

In sum, I do not interpret sections 3-3-218 and 3-3-209 as creating tort liability upon vendors who sell alcoholic beverages to intoxicated persons. I shudder to think of the detrimental effect that this holding will have on the lifestyles of Arkansans — restaurants, hotels, private clubs, country clubs, VFW Halls, and Elks Clubs, to name but a few establishments, will be significantly affected by this decision. If and when a "dramshop" act is to be desired, I have no doubt that the General Assembly will make its intention clear, such that this court will not have to resort to stretching licensing and administrative provisions to judicially create such liability. Because such an act has not been created by the legislature, I respectfully dissent.

ARNOLD, C.J., and THORNTON, J., join in this dissent.