CADILLAC COWBOY, INC. *v.* Pamela Sue JACKSON

00–1243                                                69 S.W.3d 383

Supreme Court of Arkansas
Opinion delivered March 14, 2002

*Mercy, Carter & Elliott, L.L.P.,* by: *W. David Carter,* for appellant.

*Crisp, Boyd & Poff, L.L.P.,* by: *Bill Schubert,* for appellee.

ANNABELLE CLINTON IMBER, Justice. This is the second appeal in this case. *See Jackson v. Cadillac Cowboy, Inc.*, 337 Ark. 24, 986 S.W.2d 410 (1999) (*"Jackson I"*). The appellant, Cadillac Cowboy, Inc., appeals from a jury verdict in Howard County Circuit Court in favor of Pamela Sue Jackson, individually and as the administratrix of the estate of James C. Jackson, deceased. The jury found that both Cadillac Cowboy and Kevin Holliday were liable for the death of James C. Jackson, awarding total damages of $916,363.70. Cadillac Cowboy raises three points on appeal: (1) the trial court erred in refusing to apply the Arkansas Dramshop Act, Ark. Code Ann. § 16-126-101, *et seq.* (Supp. 2001), which was enacted after this court's decision in *Jackson I*; (2) the trial court erred in denying Cadillac Cowboy's motion for judgment notwithstanding the verdict; and (3) the trial court erred in instructing the jury to apportion fault between separate defendants Cadillac Cowboy and Kevin Holliday. We conclude that the points raised are without merit, and we affirm.

Mr. Jackson was killed after his automobile was struck by a pickup truck driven by separate defendant Kevin Holliday. Prior to the accident, Mr. Holliday had been drinking at a club owned by the appellant called the Sundowners Club. In her complaint, Mrs. Jackson alleged that on August 31 and September 1, 1994, Cadillac Cowboy, by and through its owners and employees, served alcoholic beverages to Mr. Holliday, who they knew or should have known was extremely intoxicated and intended to drive his vehicle while in an intoxicated state.

The trial court dismissed the complaint pursuant to Ark. R. Civ. P. 12(b)(6) based upon our holding in *Carr v. Turner,* 238 Ark. 889, 385 S.W.2d 656 (1965), that the consumption of alcohol was the sole proximate cause in situations where vendors, licensed by

the state to sell alcoholic beverages, sell alcohol to intoxicated persons who later injure third parties. In the first appeal from the trial court's dismissal order, we examined the reasoning expressed in *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997), particularly with respect to our legislature's enactment of statutes imposing a high duty of care on vendors licensed to sell alcohol in Arkansas. *Jackson v. Cadillac Cowboy, Inc.*, 337 Ark. 24, 986 S.W.2d 410 (1999). We recognized that vendor liability extended not only to the sale of alcohol to minors, but also to the sale of alcohol to intoxicated persons. *Id.* Our respective holdings in *Shannon* and *Jackson I* relied upon the legislature's expression of state policy in effect at the time appeal was taken to this court.

In *Shannon*, we concluded that the General Assembly had assigned a high duty of care to licensed alcohol vendors as set forth in the affirmative requirements of statutory provisions. *Shannon v. Wilson, supra.* Similarly, in *Jackson I*, we turned again to Act 695 of 1989, which stated in pertinent part:

> (a) It is the specifically declared policy of the General Assembly of the State of Arkansas that all licenses issued to establishments for the sale or dispensing of alcoholic beverages are privilege licenses, and the holder of such privilege license is to be held to a high duty of care in the operation of the licensed establishment.

> (b) It is the duty of every holder of an alcoholic beverage permit issued by the State of Arkansas to operate the business wherein alcoholic beverages are sold or dispensed in a manner which is in the public interest, and does not endanger the public health, welfare, or safety. Failure to maintain this duty of care shall be a violation of this act and grounds for administrative sanctions being taken against the holder of such permit or permits.

1989 Ark. Acts 695 (codified at Ark. Code Ann. § 3-3-218(a) & (b) (Repl. 1996)). Noting further that the General Assembly had deemed the sale of alcohol "to a habitual drunkard or an intoxicated person" to be a misdemeanor, Ark. Code Ann. § 3-3-209 (Repl. 1996), we determined that the "weighty responsibility" placed by our state upon licensed vendors of alcohol established a duty of care which extended to civil liability. *Jackson v. Cadillac Cowboy*, 337 Ark. 24, 29, 986 S.W.2d 410, 413 (1999).

In reversing the dismissal order and remanding the case to the trial court, we reiterated the duty of care set forth in the statutes that existed at the time of our decision. Moreover, we held that

"evidence of the sale of alcohol by a licensed vendor to an intoxi-cated person is some evidence of negligence," and we overruled *Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965). *Jackson I*, 337 Ark. at 33-34, 986 S.W.2d at 415. Upon remand, the trial court instructed the jury based upon the standard of care announced in our mandate in *Jackson I*.

After our decision in *Jackson I*, but prior to the trial on remand, the General Assembly passed Act 1596 of 1999, which stated in pertinent part:

> SECTION 1. The General Assembly finds and determines that it needs to clarify and establish its legislative intent regarding the sale of alcoholic beverages as addressed by the Supreme Court of Arkansas in "Shannon v. Wilson, et. al" (96-762: June 23, 1997) and "Jackson v. Cadillac Cowboy, et. al." (98-574: March 18, 1999).

> SECTION 2. The General Assembly finds and determines that the knowing sale of alcoholic beverages by a retailer to a minor is contrary to the public policy of the State of Arkansas.

> SECTION 3. In cases where it has been proven that an alcoholic beverage retailer knowingly sold alcoholic beverages to a minor, or sold under circumstances where such retailer reasonably should have known such purchaser was a minor, a civil jury may determine whether or not such knowing sale constituted the proxi-mate cause of any injury to such minor, or to a third person, caused by such minor.

> SECTION 4. In cases where it has been proven that an alcoholic beverage retailer knowingly sold alcoholic beverages to a person who was clearly intoxicated at the time of such sale or sold under circumstances where such retailer reasonably should have known such person was clearly intoxicated at the time of such sale, a civil jury may determine whether or not such sale constitutes a proximate cause of any subsequent injury to other persons. For purposes of this Act, a person is considered clearly intoxicated when such person is so obviously intoxicated to the extent that, at the time of such sale, he presents a clear danger to others. It shall be an affirmative defense to civil liability under this section that an alcoholic beverage retailer had a reasonable belief that the person was not clearly intoxicated at the time of such sale or that the person would not be operating a motor vehicle while in the impaired state.

SECTION 5. Except in the knowing sale of alcohol to a minor or to a clearly intoxicated person, the General Assembly hereby finds and declares that the consumption of any alcoholic beverage, rather than the furnishing of any alcoholic beverage, is the proximate cause of injuries or property damage inflicted upon persons or property by a legally intoxicated person.

1999 Ark. Acts 1596 (codified at Ark. Code Ann. § 16-126-101, *et seq.* (Supp. 2001) ("Dramshop Act"). In this appeal, Cadillac Cowboy contends that the Dramshop Act should have controlled the disposition of this case upon remand; that is, sections 16-126-101, *et seq.* should have been incorporated into the jury instructions given at trial. As previously stated, the trial court instructed the jury in accordance with the standard of care set forth in *Jackson I.*

## Standard of Care

Cadillac Cowboy argues that the General Assembly clearly intended for the standard of care set forth in the Dramshop Act to apply to the instant case upon remand. As support for this proposition, Cadillac Cowboy points to the following language found in the Dramshop Act's proposed emergency clause: "[t]his act should go into effect as soon as possible in order that subsequent litigation be subject to this act." *See* 1999 Ark. Acts 1596, § 10. The emergency clause, however, was not adopted by the General Assembly and was erroneously included in the codification of Act 1596. *See* Ark. Code Ann. 16-126-101, *et seq.*[1] Thus, we need not address the meaning of "subsequent litigation" as used in the proposed emergency clause, nor should we attempt to use the failed clause to attempt to illuminate the intent of the legislature.

Cadillac Cowboy also relies upon our decisions in *Treiber v. Hess*, 301 Ark. 97, 782 S.W.2d 43 (1990), and *VanHook v. McNeil Monumnet Co.*, 107 Ark. 292, 155 S.W. 110 (1913), for the proposition that the trial court was obligated to apply the Dramshop Act to the case upon remand. In both *Treiber v. Hess* and *VanHook v. McNeil*, we applied legislation that had taken effect subsequent to the trial below but before the respective cases came to this court on a first appeal. Thus, the procedural posture in *Treiber* and *VanHook* is

---

[1] The Arkansas Code Revision Commission is not authorized to change in "substance or meaning . . . any Act of the General Assembly." *See* Ark. Code Ann. § 1-2-303(d)(1) (Supp. 2001).

inapposite to the instant case. Moreover, in *Treiber, supra,* we followed an express provision of the act which stated that the abolition of the cause of action for alienation of affection did "not apply to litigation pending before the effective date of [the] act." *Treiber v. Hess,* 301 Ark. at 97, 782 S.W.2d at 43 (construing section 8 of Act 46 of 1989). Cadillac Cowboy cites no authority, and we aware of none, in which this court has affirmed a trial court that ignored our mandate and applied a statute enacted after our remand of a case.

In *Jackson I,* we conclusively set forth the standard of the duty of care as contained in the statutes that existed at the time of our decision. We held:

> the General Assembly has spoken on this point and has established a high duty of care on the part of holders of alcohol licenses, which includes *the duty not to sell alcohol to high-risk groups, including intoxicated persons.* Stated a different way, a duty of care exists on the part of licensed alcohol vendors not to endanger the public health, welfare, or safety, and *that duty is breached when vendors sell alcohol to intoxicated persons in violation of § 3-3-209.*

337 Ark. at 29, 986 S.W.2d at 413 (emphasis added). Upon remand, the trial court concluded that it was bound by our mandate in *Jackson I* and charged the jury accordingly. The court gave the standard negligence instructions from Arkansas Model Jury Instructions—Civil (AMI Civil 3d 203, 302, 303, and 305), as well as the following instructions:

> A person is intoxicated when, as a result of drinking alcoholic beverages, he has lost the normal control of his physical or mental faculties. AMI 606

> In connection with the following question, you should consider that there was in force in the State of Arkansas at the time of the occurrence a statute which provided that no person shall sell intoxicating liquor to an intoxicated person.
> A violation of this statute, although not necessarily negligence, is evidence of negligence to be considered by you, along with all the other facts and circumstances in the case. AMI 601 and A.C.A. 3-3-209

Mrs. Jackson contends that the trial court was correct in following the law of the case as set forth in our mandate. We agree.

The venerable doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. The doctrine serves to effectuate efficiency and finality in the judicial process. *Frazier v. Fortenberry*, 5 Ark. 200 (1843); *see also*, 5 AM. JUR. 2D *Appellate Review* § 605 (1995). We have said the following with regard to the law-of-the-case doctrine:

> The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998). On the second appeal, the decision of the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented. *Griffin v. First Nat'l Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994).

*Clemmons v. Office of Child Support Enforcement*, 345 Ark. 330, 346, 47 S.W.3d 227, 237 (2001). The rationale for the adherence to a strict application of the rule — the avoidance of the disorder and unpredictability that would follow a departure from the doctrine — has not changed. In its brief, Cadillac Cowboy does not address the doctrine of law of the case, nor does it cite any relevant authority for a deviation from the doctrine in this case. As this court has stated many times, arguments that are unsupported by convincing argument or authority will not be considered on appeal, unless it is apparent without further research that the arguments are well-taken. *Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001) (citing *Perryman v. Hackler*, 323 Ark. 500, 916 S.W.2d 105 (1996) and *Thomson v. Littlefield*, 319 Ark. 648, 893 S.W.2d 788 (1995)). Likewise we will not modify our well-established judicial doctrine and reverse the trial court when an appellant neither cites authority nor makes an argument in support of such a result.[2] Moreover, because the General Assembly was aware of our decision in *Jackson I* when it enacted the Dramshop Act, Ark. Code Ann. § 16-126-101, we must assume that it was also aware of our remand in *Jackson I*, as well as the judicial doctrine of the law of the case.

---

[2] In urging reversal of this case based upon arguments not made and authority not cited by Cadillac Cowboy, the dissenting opinion completely ignores our basic principles of appellate review.

*Substantial Evidence*

Cadillac Cowboy moved for a directed verdict and for a judgment notwithstanding the verdict on grounds that there was "no evidence in the record from which a jury could infer that Kevin Holliday was intoxicated or [. . .] was in the club on the night in question." On appeal, Cadillac Cowboy first asserts that there was insufficient evidence to support a finding of liability under the Dramshop Act; that is, that the jury could not have concluded with a reasonable certainty that Cadillac Cowboy was aware that Mr. Holliday was "clearly intoxicated" as defined by the Act. In view of our previous holding that the trial court properly instructed the jury in accordance with the standard of care set forth in *Jackson I*, we need not address this argument. Thus, we limit our review on this point to Cadillac Cowboy's alternative argument that there was no substantial evidence to support a verdict that Cadillac Cowboy sold alcohol to an "intoxicated person" in violation of the standard of care set forth in *Jackson I*.

The standard of review for a motion for judgment notwithstanding the verdict is whether there is substantial evidence to support the jury verdict. *Gibson Appliance Co. v. Nationwide Ins. co.*, 341 Ark. 536 (2000); *Esry v. Carden*, 328 Ark. 153 (1997). Substantial evidence is defined as "evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty; it must force the mind to pass beyond suspicion or conjecture." *Esry v. Carden, supra.* In addition, we have held that in examining whether substantial evidence exists, all evidence must be examined in the light most favorable to the party on whose behalf the judgment was entered and given its highest probative value, taking into account all reasonable inferences deducible from it. *Id.* In reviewing the evidence, the weight and value to be given the testimony of witnesses is a matter within the exclusive province of the jury. *Hall v. Grimmett*, 318 Ark. 309, 855 S.W.2d 297 (1999).

According to the evidence presented at trial, Mr. Holliday had consumed a large quantity of alcohol on August 31 and September 1, 1994. Robert "Yankee Bob" Wehrheim testified that he was with Mr. Holliday most of the day of the accident, and that he had seen Mr. Holliday consume six to eight beers during the day, one beer in the truck on the way to the Sundowners Club, and several more beers and at least one mixed drink at the club. Although Mr. Wehrheim stated that he "did not see Kevin act in a way that would tell me or anyone that was looking at him that he was intoxicated,"

he also admitted that he had been drinking alcohol with Mr. Holliday most of the day.

Kevin Holliday's own testimony confirmed that he started drinking beer about noon that day and continued drinking throughout the entire afternoon and into the night. With regard to the amount of alcohol he consumed that afternoon, he could not recall whether he and Mr. Wehrheim shared a case of beer (24 cans) or a half-case of beer (12 cans). Mr. Holliday acknowledged drinking beer during the whole period of time he was the club; but, he denied drinking any alcohol after leaving the club that night "at about between 11:00 and 11:30, closer to 11:30." He estimated that it took no more than one hour to travel from the club to the scene of the accident. Finally, while he could not state how much alcohol he had consumed on the day of the accident, Mr. Holliday conceded that if he had been intoxicated, he would have been intoxicated when he left the club.

Sergeant John Watson of the Arkansas State Police, who arrived at the scene of the accident shortly after 12:45 a.m. on September 1, 1994, testified that Mr. Holliday appeared to be intoxicated. Despite Sergeant Watson's testimony that he could not say what Mr. Holliday's condition was between eight and eleven o'clock earlier that evening, the jury could have inferred from the testimony summarized above that Mr. Holliday was intoxicated while he was drinking at the Sundowners Club. Moreover, the jury was not required to believe that Mr. Holliday drove away from the club promptly at eleven o'clock. Both Mr. Wehrheim and Mr. Holliday stated that their departure time could have been as late as 11:30 p.m., rather than 11:00. Furthermore, Elaine Atkins testified that she had seen Mr. Holliday in an "extremely intoxicated" condition on more than one occasion at the Sundowners Club.

Cadillac Cowboy nonetheless contends that "the only testimony concerning Mr. Holliday's condition while being served at the club on the night in question was that he was not impaired, intoxicated, or clearly intoxicated." In that regard, it points to the testimony of Billy Burns, the manager of the Sundowners Club, Mike Tony, a bartender at the club, and Dennis Tate, a former bartender at the club. We do not agree that this testimony by both past and present club employees is undisputed. It has long been the law that the testimony of a party interested in the result of the action will not be regarded as undisputed in determining the sufficiency of the evidence. *Wingate Taylor-Maid Transport. v. Baker,* 310 Ark. 731, 840 S.W.2d 179 (1992); *Cousins v. Cooper,* 232 Ark. 605,

339 S.W.2d 316 (1960). As to any conflicting evidence presented in this case, it is up to the jury to resolve the conflicts in the testimony and judge the weight and credibility of the evidence. *Hall v. Grimmett, supra; Rathbun v. Ward*, 315 Ark. 264, 866 S.W.2d 403 (1993). Based on the evidence presented at trial, the jury could have concluded, without speculation, that Mr. Holliday was intoxicated during the time he was being served alcohol at the Sundowners Club. Reviewing the evidence in the light most favorable to Mrs. Jackson, we conclude there was substantial evidence to support the jury's verdict.

### Apportionment of Fault

Cadillac Cowboy's final point on appeal is that the trial court should not have submitted the following interrogatory to the jury on the question of liability:

> Answer this interrogatory only if you have answered "yes" to more than one of the Interrogatories numbered 1 and 2.[3]
>
> Using 100 percent to represent the total responsibility for the occurrence and any injuries or damages resulting from it, apportion the responsibility between the parties whom you have found to be responsible.
>
> Kevin Holliday:                  _____%
>
> Cadillac Cowboy, Inc.:           _____%

The jury found Mr. Holliday 75% at fault, and Cadillac Cowboy 25% at fault. Cadillac Cowboy argues that there was "no need to submit the comparative causation interrogatory," because neither of the defendants had pled, proved, or argued that the decedent was in any way negligent in connection to the accident. Although Cadillac

---

[3] Interrogatory No. 1 read as follows:

   Do you find from a preponderance of the evidence that there was negligence upon the part of Kevin Holliday which was a proximate cause of any damages to Plaintiffs?

Interrogatory No. 2 read as follows:

   Do you find from a preponderance of the evidence that there was negligence upon the part of Cadillac Cowboy, Inc. which was a proximate cause of any damages to Plaintiffs?

Cowboy concedes that "ordinarily this error might be considered harmless," it proceeds summarily to conclude that the comparative fault interrogatory, combined with comments made by Mrs. Jackson's counsel during voir dire, "apparently led the jury to believe it had to put some percentage of responsibility on [Cadillac Cowboy] for Plaintiff to obtain a recover." This argument is without merit.

The challenged interrogatory was preceded by two interrogatories asking the jury to make a finding as to whether or not each of the respective defendants was negligent. The trial court directed the jury to consider each of the interrogatories as a separate verdict. Furthermore, the jury was clearly instructed to answer the challenged interrogatory *only* if it found negligence on the part of both Mr. Holliday and Cadillac Cowboy. Absent evidence to the contrary, there is a presumption that the jury obeyed the court's instructions. *State v Robbins*, 342 Ark. 262, 27 S.W.3d 419 (2000); *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999). Even assuming the unnecessary interrogatory was erroneous, we must conclude that the jury was not misled because the instruction was obviously cured by other correct instructions. *Davis v. Davis*, 313 Ark. 549, 856 S.W.2d 284 (1993); *Skinner v. R.J. Griffin & Co.*, 313 Ark. 430, 855 S.W.2d 913 (1993).

*Counterpoints on Appeal*

In a section of her brief captioned "Counterpoints on Appeal," Mrs. Jackson raises an argument that the trial court erred in refusing to allow her to present evidence that a young man accompanying Mr. Holliday on the night of the accident was a minor. She contends that such evidence would have been relevant to impeach Mr. Wehrheim's testimony, as well as to impeach several other witnesses regarding their observations and perceptions. Mrs. Jackson also argues that the trial court erred in excluding evidence that Mr. Holliday called the club to see if he could bring his "underage companion" with him.

Mrs. Jackson, however, never filed a notice of cross-appeal in order to preserve these issues for our review. *See* Ark. R. App. P.—Civil 3(d) (2001). She also failed to prepare a supplemental abstract of a proffer of the excluded testimony. Failure to proffer evidence so that this court can determine if prejudice has resulted from its exclusion precludes review of the evidence on appeal. *Duque v. Oshman's Sporting Goods & Servs., Inc.*, 327 Ark. 224, 937 S.W.2d 179 (1997); *Carr v. General Motors Corp.*, 322 Ark. 664, 911

S.W.2d 575 (1995). Furthermore, because we affirm on direct appeal, it is not necessary that we address the points on cross-appeal.

Affirmed.

CORBIN and THORNTON, JJ., dissent.

R AY THORNTON, Justice, dissenting. Because the majority opinion completely ignores the principles of separation of powers, and chooses to arbitrarily apply the doctrine of law of the case, I must respectfully dissent. While the majority opinion is correct that Arkansas has never had an opportunity to consider the implications of an intervening legislative enactment on the law of the case in a pending legal action, other jurisdictions have encountered this situation and have determined that the law of the case doctrine does not apply. Specifically, in *Reich v. Miller*, 260 Iowa 929, 151 N.W.2d 605 (1967), the Iowa Supreme Court held:

> [T]he doctrine of the law of the case has been held to have no application where, in the interval between the two appeals, there has been a change in the law by legislative enaction or judicial ruling.

*Id. See also Jordon v. Jordon*. 132 Ariz. 38, 643 P.2d 1008 (1982). The Supreme Court of Utah, agreeing with Iowa and Arizona, acknowledged that:

> the law of the case doctrine does not apply to a case where the policy of the law has been changed in the meantime by a legislative enactment, in a case where the amended provision deals only with procedure rather than with making a change in substantive law[.]

*Petty v. Clark*, 113 Utah 205, 192 P.2d 589 (1948). In *Petty*, the Utah Court also explained that "an extensive research has failed to disclose *any case* where *any court* has held that the law of the case doctrine applies to this kind of a situation." *Id.* (emphasis added). Unfortunately, pursuant to the majority opinion, Arkansas will fill the gap in the case law as the only state in which a court chooses to ignore a legislative enactment changing the guidelines for implementation of the policy of the law between two appeals both of which were grounded upon the public policy as established by the legislature.

Applying the doctrine of law of the case to the case now on review forces an absurd result that is contrary to the case law of

other jurisdictions. In the first appeal of this case, we determined that the trial court had erred in dismissing Mrs. Jackson's cause of action against Cadillac Cowboy pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure. *Jackson v. Cadillac Cowboy, Inc.*, 337 Ark. 24, 986 S.W.2d 410 (1999) *(Jackson I)*. After reviewing several regulatory statutes, we determined that the legislature intended to reverse at least thirty-four years of judicial interpretation of the common law and to establish a cause of action for negligence which could be pursued by Mrs. Jackson against Cadillac Cowboy. *Id.* Based upon these regulatory statutes, we concluded that a vendor licensed to serve alcoholic beverages could be subjected to civil liability for negligence when that sale was to an intoxicated person who then causes injury to a third party. *Id.* After reaching this conclusion, we declined to specifically articulate standards or guidelines for pursing the of cause of action. *Id.* Indeed, the matter before us for decision in *Jackson I* was an Ark. R. Civ. P. 12(b)(6) motion testing only whether such a cause of action had been created by regulatory statutes adopted by the legislature.

Approximately one month after our decision in *Jackson I*, the General Assembly enacted Act 1596 of 1999. The Act, which was codified at Ark. Code Ann. § 16-126-101, *et seq.* (Supp. 2001), stated that it intended to clarify and establish the legislative intent regarding the sale of alcoholic beverages as addressed by our court in *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997) and *Jackson I*. Act 1596 legislatively identified a civil cause of action that may be brought against a retailer who knowingly sells alcoholic beverages to a person who is clearly intoxicated when that sale is the proximate cause of injuries to a third person.

Act 1596 was the General Assembly's response to our interpretation of its regulatory statutes, and its attempt to clarify and mandate guidelines and procedures to be followed in such cases. Specifically, the General Assembly, acting within its legislative powers, chose to specify a framework for the cause of action articulated by us in *Jackson I* on the basis of regulatory statutes previously adopted by the legislature. Act 1596 expressed a change in the regulations and guidelines for implementation of the policy of the law as established by the legislature for the State of Arkansas. For us to thereafter refuse to apply the legislative directives is violative of the principles of separation of powers. By applying the law-of-the-case doctrine to the facts of this case, and ignoring the subsequent legislative enactment, we are acting as lawmakers instead of interpreters of the law.

I respectfully dissent.

I am authorized to state that Justice CORBIN joins in this dissent.