Jacqueline Kight WILSON *v.* John Lofton WILSON

89-67                                                           781 S.W.2d 487

Supreme Court of Arkansas
Opinion delivered December 18, 1989
[Rehearing denied January 16, 1990.*]

*Crockett & Brown, P.A.*, for appellant.

*Dodds, Kidd, Ryan & Moore*, for appellee.

ROBERT S. HARGRAVES, Special Justice. This is the second appeal of this divorce case. *Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). In that case we remanded on two points.

---

*Buzbee, Sp. C.J. and McIvor, Sp. J., would grant rehearing. Turner, J., not participating.

First, we held the chancellor abused his discretion in finding that none of the incentive bonus due appellee from his employer was marital property. Secondly, we remanded to permit both parties to fully develop the record regarding the value of appellee's corporate stock in Orthopedic Associates, Inc.

On remand the chancellor awarded appellant one-half of the incentive bonus after first deducting the income tax liability assessed against the bonus and the amount of a marital debt owed appellee's corporate employer. The chancellor also determined the value of appellee's stock interest in Orthopedic Associates, Inc., to be $20,000, the same amount which he had determined at the first trial.

In this appeal, appellant argues only that the chancellor erred by failing to follow the law of the case as mandated in our earlier decision. We hold the doctrine of the law of the case is not applicable to the factual questions which we remanded to the chancellor and we therefore affirm.

The basic issue before us on this appeal is whether the values found by the chancellor on remand violated the mandate of our decision in the first appeal. When this matter was first before us, this court did not undertake to value the appellant's interest in appellee's incentive bonus. We merely decided the bonus to be marital property. Likewise, we did not value the appellee's stock interest in Orthopedic Associates, Inc. We said that on the basis of the record then before us, we thought it apparent that the stock exceeded a value of $20,000, but the evidence was insufficient for us to place a value on the stock. Consequently, we remanded the case for the chancellor to reconsider those issues in light of our decision.

Unlike the dissent, we do not read our decision in *Wilson I* to hold it was error for the trial court to rely on the stock purchase agreement in evaluating the worth of the professional association. We said the record before us indicated the stock was worth more than the amount prescribed in the stock purchase agreement, but we were unable to place a fair value on the stock from the evidence in that record.

The quantity and quality of the evidence developed on remand is substantially different from the evidence adduced at

the initial hearing.

■ The doctrine of the law of the case cannot be applied to factual questions which were expressly remanded for determination by the trial court. It is conclusive only where the facts on the second appeal are substantially the same as those involved on the prior appeal. The rule does not apply if there is a material change in the facts. *Potter* v. *Easley*, 288 Ark. 133, 703 S.W.2d 442 (1986); *Hartford Fire Ins. Co. v. Enoch*, 79 Ark. 475, 96 S.W. 393 (1906).

■ From his lengthy and reasoned opinion, it is apparent the chancellor properly construed and applied our reasoning in the first appeal to his findings of fact on remand. Even though we consider chancery appeals *de novo*, we will not reverse unless the trial court's factual findings are clearly erroneous. ARCP Rule 52(a); *Milligan* v. *General Oil Co. Inc.*, 293 Ark. 401, 738 S.W.2d 404 (1987). From our review of the record, we cannot say the chancellor's determination of the value of both the incentive bonus and corporate stock were clearly erroneous.

Affirmed.

HOLT, C.J., NEWBERN and GLAZE, JJ., not participating.

MARCIA L. MCIVOR, Special Justice, dissents in part and concurs in part.

J.R. BUZBEE, Special Chief Justice, joins the dissent.

MARCIA MCIVOR, Special Justice, dissenting in part; concurring in part. The majority has voted to affirm the trial court's opinion after remand from this court in *Wilson* v. *Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987). In that opinion, we remanded the case on two points. First, we held that the trial court abused its discretion in not considering the incentive bonus which appellee received on June 30, five days after the decree of divorce was entered, as marital property subject to division. Second, we held that it was error to rely on the stock purchase agreement between appellee and Orthopedic Associates, Inc., as the sole measure of appellee's professional practice. Although appellant had submitted evidence through one expert, showing a considerably higher value, the appellee offered no evidence other than the stock purchase agreement, and we felt fairness required remand to

permit both parties to develop proof of the value.

Appellant now argues that the chancellor failed to follow the law of the case in reaching a decision after remand. On hearing after remand, the trial court found appellant was entitled to half of the $67,078 incentive bonus but reduced the bonus by amounts withheld by Orthopedic Associates, Inc., for what may have been an advance or a debt, and further reduced appellant's share of the bonus by an "income tax reduction." Although the record is not clear how the trial court reached the conclusion that appellant's "half" of the bonus should be $11,259, appellant has not assigned as error the reductions to the bonus of "tax" and "debt." The principle of law on this issue as announced in *Wilson I* was that most of the incentive bonus accrued and therefore was acquired during the marriage and was, therefore, marital property. The majority finds that the doctrine of the law of the case is not applicable to disturb the trial court's decision, and on the point of the incentive bonus, I concur.

However, the same should not be true of the findings of the trial court on the value of Dr. Wilson's professional practice. In *Wilson I* we held that it was error to rely on the stock purchase agreement between appellee and Orthopedics Associates, Inc., as the method of evaluating the worth of that professional association and Dr. Wilson's one-third interest in it. *Wilson I* held that it was error to rely upon the $20,000 figure which the stock purchase agreement set as both a buy-in and buy-out figure. Yet the trial court, after hearing the other evidence, again returned to that agreement to value appellee's share of the corporation. The trial court's rejection of any other method of evaluation is inconsistent with the mandate of *Wilson I*, and with the Arkansas statute on marital property division which requires that all martial property be distributed equally unless an equal division is inequitable. In *Day* v. *Day*, 281 Ark. 261, 663 S.W.2d 719 (1984), we recognized that neither party should be permitted to deprive the other of an interest in property subject to division by putting the property temporarily beyond his or her control. Yet the stock purchase agreement involved here has a similar effect of artificially limiting the value of property available for division, while preserving a significant segment of it for future income generation of one of the parties.

When the marital property at issue is an interest in a professional association, Ark. Code Ann. § 4-29-208 (1987) precludes persons not licensed as a professional of that type from ownership, management or voting in any shares of any such a professional association. This case typifies the problem of reaching a monetary value of a martial asset which is not bought and sold on the open market. The complexity of the valuation issue should not obscure the purpose of the property division statute. "The legislature no doubt intended for common sense and logic to apply in cases where a statute does not specifically cover the exact factual situation before the court." *Wagoner* v. *Wagoner*, 294 Ark. 82, 740 S.W.2d 915 (1987) (Purtle, J., dissenting). The court cannot award appellant shares in the appellee's professional association because of the prohibition of Ark. Code Ann. § 4-29-208. Therefore, the court should reach a fair assessment of the economic value to appellee of that asset and make a monetary award to the spouse of half that amount.

In reaching the valuation, courts may consider stock purchase agreements such as this one in arriving at the value of a professional's share in a professional association. However, the courts must also consider the inherent inappropriateness of those agreements as a measure of the value of the share in a divorce action. This stock purchase agreement is subject to change by the corporation, of which the professional, appellee in this case, is a one-third owner. As appellee's witnesses candidly admit, the purpose of such agreements is to protect the corporation and its members, but not their spouses or former spouses. While the agreement may be a *bona fide* business planning tool to meet objectives such as preventing changes in ownership, promoting economic continuity, protection from outsiders and minimizing tax consequences, they are not conclusive measures of the economic value of the share of one member in a divorce action. The figure, in this case $20,000, is selected as a means of convenience to avoid difficult computations and litigation if one of the members resigns, but there is no evidence in this case that the wife acquiesced in the figure as a method of evaluation, or that she should be bound by it in these circumstances. In this case, the stock purchase agreement was executed sixteen months after the parties' divorce action was commenced, a fact certainly in mind of the appellee, and known to the lawyers advising the members of

the corporation. When there is a right of first refusal by the corporation, this provision prevents or discourages knowledgeable offers to establish a value. All of these considerations led to our rejection of the stock purchase agreement as the measurement of appellee's share of the professional association in *Wilson I* and our remand to the trial court.

On remand the trial court rejected alternative higher values by various experts, because those values had included the accounts receivable of Orthopedics Associates, Inc. The trial court's position rests on an assumption about whether appellant would get a share of the accounts receivable when Dr. Wilson leaves the professional association. That will depend on the terms of the agreement in effect when Dr. Wilson leaves. Those terms have changed once and may change again, a matter within the control of Dr. Wilson and his associates. That should not mean that a method of establishing the value of Orthopedics Associates, Inc., cannot consider the accounts receivable, which are a substantial asset of any such professional association. To consider the accounts receivable in evaluating the association is not the same as awarding appellant a share of the accounts themselves. This problem was considered by the court in *Stern* v. *Stern*, 66 N.J. 340, 331 A.2d 257 (1975). There the court rejected contentions similar to the theory on which the chancellor in *Wilson* rejected evaluations of Orthopedics Association, Inc. *Stern* found that the accounts receivable were to be considered as one of the elements in determining the entire worth, along with other assets, and accounts payable and other liabilities. All of these are elements to be considered in reaching a monetary evaluation of a professional association by several methods accepted by the courts.

The majority rejects appellant's arguments by citing those cases in which we found that the doctrine of the law of the case does not apply if there is a material change in the facts, and suggesting that the quantity and quality of evidence on remand is substantially different from the evidence adduced at the initial hearing. However, though there may be more and different evidence on the facts, this does not amount to a material change in the facts of the case. The issue here on the "law of the case" goes to whether or not the trial court on remand has applied the principles of law determined and announced in the first appeal.

*Overton Constr. Co., Inc.* v. *First State Bank*, 285 Ark. 361, 688 S.W.2d 268 (1985).

In my view, the trial court failed to follow the mandate of *Wilson I* when it rejected the other evaluations of appellee's one-third (¹/₃) share of the partnership and again used the stock purchase agreement value of $20,000 as a measure of appellee's share of the value of the professional association.

In the final analysis it is our duty to see that the law enables people to have a fair decision after their day in court. In chancery cases this court reviews *de novo*, and may, rather than remand, determine what judgment should have been reached. *O'Neal* v. *Ellison*, 266 Ark. 702, 587 S.W.2d 580 (1979). Since the record is now fully developed, we should determine the value of appellee's share of the professional association on this *de novo* review and make an equitable distribution as the decree which the chancellor should have entered.

J. R. BUZBEE, Special Chief Justice, joins in the dissent.