Richard WEISS, Director of the Arkansas Department of Finance and Administration, *Appellant v.* Jimmy R. McFADDEN, William W. Joplin, and James T. French, On Behalf of Themselves and All Taxpayers Similarly Situated, *Appellees / Cross-Appellants*; Arkansas Attorney General, *Cross-Appellee*

03-1215 148 S.W.3d 248

Supreme Court of Arkansas
Opinion delivered February 19, 2004

*William E. Keadle*, Revenue Legal Counsel, for appellant.

*Nichols & Campbell, P.A.*, by: *H. Gregory Campbell* and *Mark W. Nichols*, for appellees/cross-appellants.

*Mike Beebe*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, and *Nicana C. Sherman*, Ass't Att'ys Gen., for cross-appellee.

BETTY C. DICKEY, Chief Justice. This is the second appeal from an illegal-exaction lawsuit that was filed by a group of taxpayer retirees against the appellant, the Arkansas Department of Finance and Administration (DF&A). In our first decision related to this case, we held that after-tax contributions to retirement plans are property and are therefore not subject to income taxes. *See Weiss v. McFadden*, 353 Ark. 868, 120 S.W.3d 545 (2003) (*Weiss I*). We further held that an income tax levied against after-tax contributions pursuant to Ark. Code Ann. § 26-51-307 is an *ad valorem* tax on property in violation of Ark. Const. Amend. 47, and such an *ad valorem* tax is an illegal exaction under Ark. Const. Art. 16, § 13. *Id.*

This second appeal concerns the refund mechanism fashioned by the trial court upon remand of *Weiss I* as well as the issue of the constitutionality of Act 380 of 1991. Both the appellee taxpayers and the DF&A proposed refund mechanisms as a remedy for taxes that had been illegally exacted from the appellees. The trial court opted for the appellees' methodology, which allows retirees to recover the full benefit of their after-tax contributions. The DF&A appeals this ruling, asserting that the trial court erred in (1) refusing to apply the voluntary-payment rule to any illegally-exacted taxes that were paid prior to the filing of the lawsuit in 1999, and (2) refusing to apply 26 U.S.C. § 72, which prorates recovery of after-tax contributions on federal tax returns. On cross-appeal, the appellees argue the trial court erred in finding that Act 380 of 1991 does not violate the intergovernmental tax-immunity doctrine.

This suit was adjudicated in a bench trial. In bench trials, the standard of review on appeal is whether the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Carwell Elevator Co., Inc. v. Leathers*, 352 Ark.

381, 101 S.W.3d 211 (2003). As to the appeal, although the trial court was not clearly erroneous in its refusal to apply 26 U.S.C. § 72, we agree that the trial court should have applied the voluntary-payment rule and we reverse and remand with instructions to do so. As to the cross-appeal, we affirm the trial court's ruling that Act 380 of 1991 is constitutional. Because this is the second appeal on a case already heard in this court, we have jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(a)(7).

■■ Before addressing the appeal and cross-appeal, we note that the appellees filed a motion to dismiss this appeal, contending that the trial court's order is not a final and appealable order because (1) it does not adjudicate claims that § 26-51-307(c) is unconstitutional under Ark. Const. Art. 16, § 5 and the Equal Protection Clause, and (2) the trial court did not enter a Rule 54(b) certificate. We disagree. Once a statute is declared unconstitutional, the statute is a nullity and in legal contemplation is as inoperative as if it had never been passed. *Morgan v. Cook*, 211 Ark. 755, 202 S.W.2d 355 (1947). Because we declared Ark. Code Ann. § 26-51-307(c) unconstitutional under Amendment 47, there was no need for the trial court to decide the other constitutional claims. In addition, by finding that Act 380 of 1991 did not violate the intergovernmental tax-immunity doctrine, the trial court made a final ruling on that claim as well. Finally, because all of the issues were adjudicated, a Rule 54(b) certificate is not necessary. Accordingly, we hold that the trial court's October 1, 2003, order is a final order for appeal purposes. Therefore, the appellees' motion to dismiss the appeal is denied.

A brief recitation of pertinent facts is necessary to an understanding of the issues on appeal. Given the complexity of the facts, we will first address the issues in the appeal of the trial court's decision regarding Ark. Code Ann. § 26-51-307, then we will address the cross-appeal concerning the constitutionality of Act 380 of 1991.

On July 27, 1999, appellees Jimmy McFadden, William Joplin, and James French, et al., brought an action against Richard Weiss, Director of DF&A, alleging that Ark. Code Ann. § 26-51-307(c) was unconstitutional. Section 26-51-307 provided an exemption from income tax on the first $6,000 of retirement benefits for persons filing Arkansas income tax returns, but subsection 307(c) specifically disallowed recovery of a retiree's after-tax contributions. This, in effect, was an income tax on after-tax

contributions. The taxpayers contended that the after-tax contributions were property rather than income, and asked for a declaratory judgment to that effect. Their remedy request was twofold: (1) an injunction against the State to cease the income tax on after-tax contributions when they are returned as a portion of retirement benefits, and (2) a refund to taxpayers of all illegally-exacted taxes on those after-tax contributions.

The trial court found subsection 307(c) unconstitutional as an *ad valorem* tax on property, and we affirmed this decision. *See Weiss I, supra.* With the elimination of § 26-51-307(c), the Arkansas income tax code is now silent as to the recovery of after-tax contributions as deductions. On remand, DF&A asked the trial court to apply 26 U.S.C. § 72, which uses an actuarial formula to prorate over a period of years the recovery of after-tax contributions as deductions on federal income tax returns. The DF&A wanted the trial court to order the use of § 72 and its prorated formula to fill the void left by § 26-51-307(c). This would allow recovery of a retiree's tax contributions as deductions to be spread out over a period of several years, thus cutting off recovery of any tax paid on those contributions prior to 1999 when the lawsuit was filed. The appellee taxpayers opposed the use of § 72 and instead provided the trial court with their own refund methodology. Under this methodology, instead of asserting a specific amount of taxes that were illegally exacted from them, the appellees instead claim that the State denied them the benefit of being able to claim the return of their after-tax contributions as deductions from income on their Arkansas income tax returns. In other words, because the State never allowed them to deduct the contributions, their taxes have been higher than they should have been. The appellees also assert that because the State never allowed them to deduct those contributions, the contributions still remain in their retirement accounts, awaiting recovery.

The appellees' plan, which the trial court approved, provides for the recovery of all after-tax contributions made to retirement accounts. This recovery would be spread over a period of four years, beginning with tax year 1999. Under this plan, a retiree can deduct after-tax contributions up to the amount of total retirement benefits for 1999, thus providing for a refund of any taxes paid on those retirement benefits. If there are after-tax contributions left over, those contributions may be rolled over into tax years 2000, 2001, and 2002, providing a refund of taxes paid in those years. Because all after-tax contributions will be

recoverable as deductions under this plan, the voluntary-payment rule was not applied by the trial court to years prior to 1999. DF&A appeals, arguing that the trial court should have applied both the voluntary-payment rule and 26 U.S.C. § 72 to the recovery of after-tax contributions.

### Voluntary-Payment Rule

It is well-settled that taxes paid prior to the filing of an illegal-exaction suit are deemed voluntarily paid. *See Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000). As we observed in *Mertz v. Pappas*, 320 Ark. 368, 896 S.W.2d 593 (1995),

> When taxes are paid to a government they are deposited into that government's general revenues and ordinarily are spent within that tax year. However, when the government is *put on notice* that it may be required to *refund those taxes*, it can make the appropriate allowance for an appropriate refund. If we were to allow refunds for taxes voluntarily paid in previous years, it would jeopardize current and future governmental operations because current and future funds might be necessary for the refund.

*Id.* at 370, 896 S.W.2d at 594 (emphasis added).

The DF&A argued below and on their first appeal that it has taxed only income — never property — and that it never allowed any recovery of after-tax contributions as deductions. Therefore, the appellee taxpayers reason, those after-tax contributions are still in their retirement accounts awaiting recovery and no taxes have been voluntarily paid on those contributions.

The appellees further argued to the trial court that since Ark. Code Ann. § 26-51-307(c), which disallowed recovery of those contributions, has been found unconstitutional, they should be able to recover all of their after-tax contributions as deductions and "front-end load" them as amendments to their 1999-2002 tax returns that were already filed. In that way, they would get the full benefit of their after-tax contributions; then, for the years 2003 forward, their gross income would be reduced by recovery of after-tax contributions in whatever methodology the General Assembly sets forth to allow that benefit in the future. Under this theory, the voluntary-payment rule would not apply because no taxes were ever illegally exacted prior to 1999. Additionally, the appellees argue that this methodology is similar to the one fol-

lowed in *Pledger v. Bosnick*, 306 Ark. 45, 811 S.W.2d 286 (1991), in which the voluntary-payment rule was not applied.

The appellees' argument fails for two reasons. First, the statute in question in *Pledger v. Bosnick, supra,* was found to be in violation of the intergovernmental tax-immunity doctrine, as set forth in *Davis v. Michigan*, 489 U.S. 803 (1989). We found this *Davis* violation was controlled by the guidance in *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), which sets forth factors that are considered when determining whether the unconstitutionality of a statute will be applied retroactively. In the case of *Pledger v. Bosnick, supra,* we found that the *Chevron* factors required retroactive application of the rule; therefore, the retirees in *Pledger v. Bosnick, supra,* received the entire sum of money that had been taken from them under the unconstitutional law in question.

■ In the instant case, Ark. Code Ann. § 26-51-307(c) was found unconstitutional under Amendment 47 to the Arkansas Constitution. There was never a finding that the illegally-exacted funds violated the intergovernmental tax-immunity doctrine, so the instant case does not fall under the *Chevron* and *Davis* rubric. Thus, the voluntary-payment rule applies if taxes were paid on after-tax contributions recovered prior to 1999.

■ The second reason the appellees' argument fails is because the appellees claim that their after-tax contributions still remain in the coffers of their retirement accounts; and yet, those after-tax contributions have been deducted on federal income tax returns in a prorated manner under 26 U.S.C. § 72. If a portion of appellees' retirement benefits prior to 1999 was the recovery of a portion of their after-tax contributions for federal income tax purposes, then the appellees cannot argue that those contributions are still in their retirement accounts. The nature of their retirement benefits does not depend on whether it is a federal income tax return or a state income tax return being filed. Either the appellees have received a portion of their after-tax contributions and been taxed on those contributions as income, or they have not; and if they have received them on their federal income tax returns, then those after-tax contributions that were taxed and were received prior to 1999 are subject to the voluntary-payment rule.

The appellees argue that the DF&A's refund methodology would require every retiree who has after-tax contributions in a retirement account to file amended returns for 1999-2002. They

also argue that the DF&A's methodology requires inclusion of the retirees' birth dates, retirement dates, and dates of birth of their beneficiaries, in order to develop the actuarial table that would project the number of years the retirees would be receiving benefits. Appellees counter that such a methodology would be infeasible and unmanageable, because the DF&A's own expert testified that such a method would require an extensive amount of processing time for the amended returns. Appellees posit that such a methodology would take years to complete, effectively barring the appellees from any real recovery.

However, there are other equitable ways by which a refund may be effected while still acknowledging the voluntary-payment rule. One such way would be for the appellees to file amended returns for 1999 through 2002, attaching copies of their federal income tax returns. They could adjust their income on the Arkansas returns by the amount of after-tax contributions claimed on their federal returns for those years. In this way, all taxes paid on after-tax contributions received prior to 1999 would be considered voluntarily paid; while, at the same time, the appellees would receive the benefit of a refund of those taxes illegally exacted in 1999-2002 because they were not allowed to recover their after-tax contributions during those years.

█ Because the trial court erred in refusing to apply the voluntary-payment rule to illegally-exacted taxes paid in the years prior to 1999, we reverse and remand on this point with instructions to fashion a remedy consistent with this opinion.

### Application of 26 U.S.C. § 72

Next, the DF&A argues that the trial court erred in refusing to apply § 72 of the Internal Revenue Service Code, codified at 26 U.S.C. § 72, when fashioning the remedy in this case. We disagree. Ark. Code. Ann. § 26-51-404(b)(24) reads as follows:

> (A) Sections 72(a), (b), and (c) of the Internal Revenue Code of 1986, as in effect on January 1, 2001, relating to the exclusion from gross income of certain proceeds received under nonemployment-related life insurance, endowment, and annuity contracts, is hereby adopted for the purpose of computing Arkansas income tax liability.

> (B) Annuity income received through an employment-related retirement plan shall not be subject to the provisions of § 26-51-

404(b). The income shall instead be subject to the retirement income provisions of § 26-51-307.

Ark. Code Ann. § 26-51-404(b)(24) (Supp. 2003).

■ In *Weiss I* we held that both Ark. Code Ann. § 26-51-404(b)(24)(B) and § 26-51-307 are plain and unambiguous and we gave these statutes their plain meaning. The express terms of § 26-51-404(b)(24)(A) clearly state that nonemployment-related retirement plans are covered under IRS Code § 72, while the express terms of § 26-51-404(b)(24)(B) clearly state that employment-related retirement plans are subject to § 26-51-307. The retirement plans at issue are employment-related; therefore, § 26-51-307 governs them.

Subsection (c) of § 26-51-307 was the only subsection of the statute that addressed recovery of after-tax contributions. With the invalidation of subsection (c), the DF&A urges that a "void" now exists in the tax code with regard to after-tax contributions in employment-related retirement plans. The DF&A argues that the trial court should have applied § 72 to fill that "void" because, as it states in its argument, "it is logical to *assume* the General Assembly *would have intended*" for § 72 to be used as a guide.

■ There is nothing in § 26-51-307 to indicate that the General Assembly intended that § 72 be applied to recovery of after-tax contributions in employment-related retirement plans. We will not read into a statute a provision not put there by the General Assembly. *Neeve v. City of Caddo Valley*, 351 Ark. 235, 91 S.W.3d 71 (2002); *State v. Goss*, 344 Ark. 523, 42 S.W.3d 440 (2001). We thus hold that the trial court did not err in refusing to apply 26 U.S.C. § 72 to employment-related retirement plans.

### Cross-Appeal — Constitutionality of Act 380 of 1991

■ The sole issue on cross-appeal is the meaning of Act 380 of 1991. Issues of statutory interpretation are reviewed *de novo*, as it is for this court to decide what a statute means. *Mississippi Transmission Corp. v. Weiss*, 347 Ark. 543, 65 S.W.3d 867 (2002).

The appellee taxpayers alleged that Act 380 of 1991 is an unconstitutional violation of the intergovernmental tax-immunity doctrine. Act 380 provided for a one-time four percent increase in retirement benefits to some members of the Arkansas Public

Employees Retirement System (APERS), the Arkansas State Police Retirement System, and the Arkansas State Highway Employees Retirement System, and their beneficiaries. The appellees assert that Act 380 was not actually an increase in retirement benefits but was, instead, a disguised tax rebate for state retirees. Since Act 380 does not provide for any such increase in benefits for federal retirees, the appellees argue that Act 380 violates the intergovernmental tax-immunity doctrine, which prohibits states from taxing income earned by federal employees differently than income earned by state employees. 4 U.S.C. § 111(a). The cross-appellee, Arkansas Attorney General, intervened to defend Act 380.

The Attorney General filed a motion for summary judgment, arguing that Act 380 is clear and unambiguous, and it is a benefit increase that does not violate the intergovernmental tax-immunity doctrine. The cross-appellant taxpayers also filed a motion for summary judgment, claiming that the language of Act 380 was ambiguous and the trial court should go behind the plain language of the statute to find the design and intent of the legislature was to provide for a tax rebate for state government retirees.

The trial court found that Act 380 is clear and unambiguous and granted the Attorney General's motion for summary judgment, and the trial court did not address the cross-appellants' motion for summary judgment or the merits of their claim. The cross-appellants appeal that ruling, contending that even if the language of Act 380 is clear and unambiguous, the trial court should have looked beyond the plain meaning of the act to determine its "design and effect." We disagree.

 It is well established that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually-accepted meaning in the common language. *Cave City Nursing Home, Inc. v. Arkansas Dept. of Human Serv.*, 351 Ark. 13, 89 S.W.3d 884 (2002). When a statute is clear, we will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Id.*

The cross-appellants rely heavily upon *Vogl v. Dept. of Revenue*, 327 Or. 193, 960 P.2d 373 (1998), which was decided in the wake of state legislative action that followed the United States Supreme Court's decision in *Davis v. Michigan*, 489 U.S. 803

(1989). In *Davis v. Michigan, supra*, the U.S. Supreme Court held a Michigan statute unconstitutional because it exempted the benefits of state retirees from taxation, but did not exempt the retirement benefits of federal retirees. In response to *Davis*, Oregon passed a statute which increased by up to four percent the Oregon Public Employees Retirement System benefits, and repealed the full tax exemption of state government retirees' benefits. In *Vogl v. Dept. of Revenue, supra*, the Oregon Supreme Court held the Oregon statute was an unconstitutional violation of the intergovernmental tax-immunity doctrine because it was merely a tax rebate designed to offset the effects of the *Davis* decision.

The Oregon statute differed from Act 380 in that it expressly stated that the four percent increase in retirement benefits was in response to the *Davis* decision subjecting Oregon retirees' benefits to income taxation. *See Vogl v. Dept. of Revenue, supra*. The plain and unambiguous language of the Oregon statute provided tax relief to state retirees that was not available to federal retirees. Moreover, the Oregon statute was part of that state's tax system. Act 380, on the other hand, contains no such language:

> SECTION 1. (a) On July 1, 1991, the monthly retirement benefit payable to retirants and beneficiaries of the Arkansas Public Employees Retirement System, who retired June 1, 1991, or before, shall be increased by four percent (4%) of the benefit payable on June 1, 1991.
>
> (b) The increase in benefits provided above shall be added to the monthly benefit after the annual post-retirement increase based on the consumer price index has been applied, and the increase in subsection (a) of this section shall be added to the base annuity of the retirant or beneficiary.

1991 Ark. Acts 380.

Sections 2 and 3 of Act 380 read identical to Section 1, except that Section 2 applies to State Police retirees and Section 3 applies to State Highway retirees. Unlike the Oregon statute, Act 380 was never part of the Arkansas tax code. Furthermore, the Emergency Clause of Act 380 stated that state retiree benefits were inadequate and the increase was to overcome undue hardship to retirees and their beneficiaries. There is no mention in Act 380 of an attempt to offset the repeal of a tax exemption. In fact, while the Arkansas tax code is codified at Title 26 of the Arkansas Code, Act

380 of 1991 is codified at Title 24, in Ark. Code Ann. § 24-4-612 (APERS retirees), § 24-5-126 (State Highway retirees), and § 24-6-224 (State Police retirees). Thus, these increases were not part of the tax code. Furthermore, a cursory glance at Sections 4, 5, and 6 of Title 24 shows that Act 380 of 1991 was only one of several benefit increases that have taken place over the years.

In asking us to look to the "substance of the benefit" even if the language of Act 380 is plain and unambiguous, the cross-appellants invite us to look into the motives of the drafters of the Act. This we will not do. When a statute is not ambiguous, we will not interpret it to mean anything other than what it says. *Cave City Nursing Home, Inc. v. Ark. Dept. of Human Serv., supra.* We decline the cross-appellants' invitation to look beyond the plain language of Act 380 and affirm the trial court's ruling that Act 380 of 1991 is plain and unambiguous and does not violate the intergovernmental tax-immunity doctrine.

In sum, we affirm the trial court's ruling that Act 380 of 1991 does not violate the intergovernmental tax-immunity doctrine; we affirm the trial court's refusal to apply 26 U.S.C. § 72 to after-tax contributions in employment-related retirement plans; and we reverse the trial court's ruling that the voluntary-payment rule did not apply to taxes paid on after-tax contributions and remand with instructions to fashion a remedy consistent with this opinion.

Affirmed in part, reversed and remanded in part.