Robbie R. JONES *v.* DOUBLE "D" PROPERTIES, INC.,
An Arkansas Corporation, and Charlie Daniels,
Commissioner of State Lands

03-1009 161 S.W.3d 839

Supreme Court of Arkansas
Opinion delivered April 29, 2004

[Rehearing denied June 10, 2004.]

150

*Oscar Stilley*, for appellant.

*Gean, Gean & Gean*, by: *David Charles Gean*, for appellee Double "D" Properties.

*Mike Beebe*, Att'y Gen., by: *Anthony W. Black*, Ass't Att'y Gen., and *Carol A. Lincoln*, Staff Attorney, for appellee Charlie Daniels.

DONALD L. CORBIN, Justice. Appellant Robbie R. Jones appeals the order of the Sebastian County Circuit Court denying her motion for permission to file a new complaint and awarding distribution of the proceeds of a tax sale amongst Jones and Appellees Double "D" Properties, Inc., and Charlie Daniels, Commissioner of State Lands, State of Arkansas.[1] We have jurisdiction over this case pursuant to Ark. Sup. Ct. R. 1-2(a)(7), because it is a second or subsequent appeal of this matter in this court. *See Jones v. Double "D" Properties, Inc.*, 352 Ark. 39, 98 S.W.3d 405 (2003) *(Jones I)*. Jones raises two points for reversal, neither of which has any merit. We thus affirm the trial court's judgment.

The underlying facts of this property dispute were set out fully in our previous decision, and we will not repeat them here except to the extent that they are necessary to an understanding of the current appeal. Suffice it to say that at the heart of this case is the Commissioner's sale of Jones's Fort Smith residence to Double "D" due to Jones's failure to pay taxes on the property beginning in 1996 and continuing through 1999. The sale occurred in April 2001, with the limited warranty deed being issued to Double "D" by the Commissioner in May 2001. Jones initially brought suit against Appellees alleging that she had not been given notice of the delinquency and the right to redeem the property as required by Act 626 of 1983. Double "D" answered the complaint and also filed a counterclaim seeking an order directing Jones to vacate the property. Jones's husband, Buck Jones, was later joined as a party to the action, and Double "D" filed the same counterclaim against him. Robbie Jones's attorney at the time, James Filyaw, filed an answer on Buck's behalf. The matter was tried before the bench on November 2, 2001. Thereafter, the trial court issued an opinion letter, dated December 27, 2001, and entered on January 2, 2002,

---

[1] Daniels no longer holds this office; Mark Wilcox is the current Commissioner of State Lands.

declaring that the Commissioner's sale complied with the notice provisions of Act 626 and that the deed issued to Double "D" was valid.

Two weeks after the trial court's ruling, on January 16, 2002, attorney Oscar Stilley entered an appearance on behalf of Buck Jones. Also on that same date, Stilley filed a pleading styled "Cross Claim Complaint" on Buck's behalf. In that pleading, Buck raised for the first time the claim that the sale and the subsequent Commissioner's deed to Double "D" were void because the property taxes levied on the Joneses' residence were illegal. Specifically, Buck alleged that the 1989 reappraisal of the property was not conducted pursuant to any valid legal authority and was not a valid countywide reappraisal. He thus contended that the reappraisal and the resulting assessments were illegal under Amendment 59 to the Arkansas Constitution. Buck also alleged that the levy was illegal in that it exceeded the product of the millage rate and the legal valuation by approximately $2 per year.

A hearing was held on March 1, 2002, following which the trial court issued an order finding that Buck's illegal-exaction claim was, in reality, a compulsory counterclaim that should have been raised at the earliest opportunity. The trial court's order reflects in part:

> Mr. Jones' earliest opportunity to present his claim occurred when on August 10, 2001, an answer was filed on behalf of Mr. Jones by Mr. Filyaw. Mr. Jones never presented his claim prior to or at the trial on November 2, 2001. However, Mr. Jones waited until after he had notice of the outcome of the case, the Court's letter opinion of December 27, 2001, before he raised his claim on January 16, 2002.

In so ruling, the trial court relied on the decision of *Foundation Telecom., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000), wherein this court held that an issue, even a constitutional one, must be presented to the trial court at the earliest opportunity and that a party may not wait until the outcome of a case to bring a matter to the trial court's attention.

On appeal, this court affirmed the trial court's ruling dismissing Buck's claim, holding that it "was truly a compulsory counterclaim and should have been brought before or during the trial of this matter." *Jones I*, 352 Ark. at 52, 98 S.W.3d at 412-13. Thereafter, Buck filed a petition for rehearing in this court, which was denied without comment. Our mandate issued on April 3, 2003.

Following our mandate, on April 9, 2003, Double "D" filed a petition asking the trial court for an order releasing the $14,600 in funds that were put up by the Joneses as a *supersedeas* bond, which were being held by the Commissioner pending the outcome of the Joneses' appeal. From these funds, Double "D" sought lost rent on the property from November 2, 2001, to the present, at a rate of $700 per month, as well as attorney's fees and costs since the appeal. Double "D" also asked the trial court to withhold the Joneses' portion of the proceeds of the sale until they vacated the premises.

On April 25, 2003, attorney Stilley, acting on behalf of both Buck and Robbie Jones, filed a response denying that Double "D" was entitled to any rent on the property, or attorney's fees, or any costs beyond those authorized in our mandate. Along with their response, the Joneses filed a motion for permission to file a "Complaint for Illegal Exaction Against the Commissioner or Other Parties or Both." The proposed complaint, which was attached to the motion, essentially restated the claim raised previously by Buck, namely that the 1989 reappraisal and the resulting tax assessments and levies were illegal because they were not done countywide and they did not comply with the rollback provisions of Amendment 59, and that the amount of taxes levied against the Joneses' property unlawfully exceeded the product of the legal valuation and the millage rate by some $2 each year.

A hearing was held on May 9, 2003, during which Double "D" presented testimony from its president, Damon Lee Wright, pertaining to the rental value of the Joneses' residence. Wright testified that based on the housing market in Fort Smith, the amenities of the property, and its central location, a monthly rate of $700 was a fair rental rate. The Joneses did not present any testimony challenging Wright's figure.

At the conclusion of the hearing, the court heard argument from the parties. In support of its petition for the release of funds, counsel for Double "D" relied on the Joneses' *supersedeas* bond, which had been posted prior to the first appeal and reflected the Joneses' agreement to satisfy all rents, costs, or damages to the property during the pendency of the appeal. As for the Joneses' motion for permission to file an illegal-exaction complaint, counsel for Double "D" argued that the claim was barred because it was the same claim raised by Buck in his counterclaim, which the trial court ruled as untimely and this court affirmed. Counsel for the

Commissioner echoed this sentiment, arguing that the issue had been raised and rejected previously by both the trial court and this court.

In response, counsel for the Joneses argued that although the allegation of an illegal exaction had been raised previously by Buck Jones, it was raised for a different purpose. Specifically, counsel stated: "When I entered my appearance as attorney for Buck Jones and raised the issue that the taxes on this — there were illegal exaction taxes included in this, the sole purpose of raising that issue was to demonstrate that the deed was void; not voidable, it was void." Counsel agreed that the Joneses could not relitigate that issue, because the trial court had rejected it previously and this court affirmed, and that "[t]he law of the case says the land belongs to Double 'D' Properties." Counsel then explained that the current purpose for raising the illegal-exaction argument was not to get the property back, but to secure a refund of the illegal tax amounts paid by them. Counsel insisted that such an argument could not have been raised previously, because the Joneses initially wanted the property itself, not the money.

At the conclusion of the hearing, the trial court denied the Joneses' motion for permission to file an illegal-exaction complaint based on this court's mandate. The trial court granted the petition to release the funds under the *supersedeas* bond. Out of those funds, the trial court awarded $9,800 in back rent to Double "D," which was calculated at $700 per month from April 12, 2002, the date of the trial court's original judgment in favor of Double "D," to June 12, 2003, the date on which the Joneses were ordered to vacate the premises. The trial court also ordered the payment of costs of $144 to Double "D" and $81 to the Commissioner, as per this court's mandate. However, the trial court denied any attorney's fees to Double "D." The trial court ordered the remaining $4,575 be released to Robbie Jones.[2] A written order was entered by the trial court on May 16, 2003, and Robbie Jones filed her notice of appeal on June 10, 2003.

### I. Denial of Permission to File Illegal-Exaction Complaint

For her first point on appeal, Jones argues that the trial court erred in refusing to require Appellees to repay or cause the repayment of all amounts derived from the sale of her property, less

---

[2] As noted in our previous opinion in this matter, the deed issued for the property was in Mrs. Jones's name alone.

the legal taxes and other lawful charges against the land, as a condition precedent to the transfer of possession of the property. In support of this point, Jones argues the merits and substance of her illegal-exaction claim. A review of the record, however, demonstrates that the trial court did not rule on this point. Rather, as set out below, the trial court's ruling was merely a denial of Jones's motion for permission to file an illegal-exaction complaint at that late stage of the proceedings:

> BY THE COURT: I'm denying your motion. I think that was addressed in the Supreme Court's opinion and in the Court's original opinion entered April 12.

> MR. STILLEY: Okay, so that would stand true then also for the illegal exaction portion?

> BY THE COURT: I'm not ruling, I'm just denying your motion. You had filed a motion to be permitted to file that cause of action in this pending case, and what I'm doing is denying that motion. I'm not saying you can't file an independent case.

> MR. STILLEY: Okay.

> BY THE COURT: I'm just saying that, you know, as far as this pending matter in this case that I'm denying that motion.

> MR. STILLEY: Okay, and is the basis of the Court's ruling then res judicata?

> BY THE COURT: I'm ruling based on the Supreme Court Mandate.

Thus, because the trial court did not rule on the merits of the proposed complaint, we will not entertain Jones's argument on this point, except to the extent that it challenges the trial court's denial of permission to file the illegal-exaction claim. *See State Farm Fire & Cas. Co. v. Ledbetter*, 355 Ark. 28, 129 S.W.3d 815 (2003); *Bell v. Bershears*, 351 Ark. 260, 92 S.W.3d 32 (2002); *Doe v. Baum*, 348 Ark. 259, 72 S.W.3d 476 (2002) (collectively holding that the failure to obtain a ruling is a procedural bar to this court's consideration of an issue on appeal).

Double "D" argues that the trial court was correct in denying the motion on the ground that the issue had already been raised by Buck Jones and had already been rejected as untimely.

Double "D" thus contends that the issue that Jones was attempting to raise in her proposed complaint was barred by the doctrine of *res judicata*. The Commissioner, on the other hand, contends that the trial court's ruling should be upheld based on the doctrine of law of the case. Specifically, the Commissioner contends that because the trial court already rejected the same claim raised by Buck and this court has affirmed that ruling, both Buck and Robbie were precluded from attempting to raise the issue once again. We agree with the Commissioner that the trial court's ruling was correct because the issue had already been decided in the first appeal and was, therefore, the law of the case.

 The doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. *Cadillac Cowboy, Inc. v. Jackson*, 347 Ark. 963, 69 S.W.3d 383 (2002). The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *Id.*; *Clemmons v. Office of Child Support Enfcm't*, 345 Ark. 330, 47 S.W.3d 227 (2001). The doctrine serves to effectuate efficiency and finality in the judicial process and its purpose is to maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuing lawsuit. *Cadillac Cowboy*, 347 Ark. 963, 69 S.W.3d 383; *Cloird v. State*, 352 Ark. 190, 99 S.W.3d 419 (2003).

 In the present case, the illegal-exaction claim asserted by Appellant Robbie Jones is the same claim previously raised by her husband, Buck Jones. Both claims alleged that the taxes assessed on the Joneses' property were the result of an illegal reappraisal, and that their collection and levy constituted an illegal exaction, in violation of Amendment 59. Both claims also alleged that the amount of taxes actually levied on the Joneses' residence exceeded the product of the legal valuation and the millage rate by approximately $2 per year. Buck's claim was dismissed by the trial court on the ground that it amounted to a compulsory counter-claim that should have been raised at the earliest opportunity. Thus, because Buck did not raise the issue until *after* the trial court had made its ruling on the merits of the case, his claim was untimely. This court affirmed the trial court's ruling, and that ruling is the law of the case in this matter. Accordingly, the issue is now barred for reconsideration.

 We are unpersuaded by Jones's attempt to distinguish the current claim from that raised prior to the first appeal on the

bases that (1) the relief sought is different, and (2) the standing of the persons bringing the claim is different. On the first basis, she asserts that the previous claim only sought to set aside the deed or have it declared void, whereas the current claim seeks a refund of all the tax monies illegally assessed,˙ levied, and collected. She claims that she could not have simultaneously sought a refund of the tax monies and ownership of the property itself, because she insists that these are inconsistent positions. However, she offers no convincing argument or authority as to why she could not have pursued such alternative theories of relief, and we are not aware of any. To the contrary, it is common practice to plead alternative theories and seek alternative remedies in the same lawsuit.

■ Regarding the issue of standing, Jones asserts that a prior claim brought by a person who was not the property owner should not stand as a bar to the fee holder. This assertion fails to recognize the import of our ruling that the illegal-exaction claim, regardless of who asserted it, was raised untimely. That was the gist of the trial court's ruling and this court's ruling in the first appeal. The bottom line is that both Buck and Robbie Jones waited until after the case had been determined on its merits before they raised the specter of an illegal exaction. We thus reject this argument.

■ We also reject Jones's argument that her claim is not barred by law of the case because the previous illegal-exaction claim was not considered on the merits. She relies on *Colbert v. State*, 346 Ark. 144, 55 S.W.3d 268 (2001), wherein this court stated:

> The State asserts in its brief that the law-of-the-case doctrine should govern this appeal. We disagree. The doctrine precludes the trial court on remand from considering and deciding questions that were explicitly or implicitly determined on appeal. As previously mentioned, Mr. Colbert was procedurally barred in his first appeal from challenging the admission of evidence that supported his simultaneous-possession conviction. Thus, because that issue was not before this court in the first appeal, it was not expressly or implicitly determined in *Colbert I.*

*Id.* at 147, 55 S.W.3d at 271 n.1 (citations omitted). Jones's reliance on this holding is misplaced, because there was no procedural bar of our consideration of the trial court's ruling in the first appeal. As stated previously, the trial court dismissed the illegal-exaction claim on the

ground that it was raised untimely, and this court affirmed that ruling. The fact that a claim is dismissed as untimely is not the same as saying that it is procedurally barred from appellate review. To the contrary, our previous decision demonstrates that the issue was before this court in the first appeal and was decided.

■ In sum, the illegal-exaction claim now raised by Appellant Robbie Jones is the same claim that her husband, Buck Jones, attempted to raise prior to the first appeal of this matter. The trial court ruled that Buck's illegal-exaction claim was a compulsory counterclaim that should have been raised at the first opportunity, once he was joined as a party to the suit. Because he did not raise it until after the trial had been held and after the trial court had issued its ruling, the trial court dismissed his claim as untimely. We affirmed the trial court's ruling, and our ruling became the law of this case. Thus, when Robbie attempted to raise the same illegal-exaction claim following our mandate, the trial court was correct to deny her permission to pursue such claim based on our mandate.

## II. Rent to Double "D"

■ For her second point on appeal, Jones argues that the trial court erred in awarding Double "D" rent on the property "until and unless all proceeds of the sale of the property, less lawful taxes and other lawful charges are paid to Appellant." She argues that Double "D" is not entitled to take possession of the property, and thus not entitled to collect rent, because she was illegally taxed prior to the sale of her property by the Commissioner. This argument is nothing more than a discussion of the substance and merits of her illegal-exaction complaint, which the trial court denied her permission to file. Accordingly, we will not address this argument beyond the trial court's ruling.

The record reflects that the trial court's award of rent to Double "D" appears to be based on the specific agreement made by the Joneses prior to the first appeal when they posted their *supersedeas* bond. The bond provides that the Joneses agreed to "pay and satisfy all rents, costs or damages to the subject property during the pendency of the appeal," and that as security for such bond, they pledged "all interest they, their heirs and assigns, may have in the principle sums on deposit" with the Commissioner as a result of the tax sale conducted on April 11, 2001. The trial court's order awarding rent to Double "D" specifically reflects this agreement by the Joneses.

 Jones has offered no authority, convincing or otherwise, as to how the trial court's ruling on this issue is in error. This court has repeatedly stated that it does not consider assignments of error that are unsupported by convincing authority. *See, e.g, Holcombe v. Marts*, 352 Ark. 201, 99 S.W.3d 401 (2003); *Bonds v. Carter*, 348 Ark. 591, 75 S.W.3d 192 (2002); *Cadillac Cowboy*, 347 Ark. 963, 69 S.W.3d 383. Moreover, Jones does not challenge the amount of rent, $700 per month, awarded to Double "D." We thus affirm the trial court's judgment on this point.

Affirmed.