Richard WEISS, Director of the Arkansas Department of Finance and Administration *v*. Jimmy R. McFADDEN, William W. Joplin and James T. French, On Behalf of Themselves and All Taxpayers Similarly Situated

04-696                                           199 S.W.3d 649

Supreme Court of Arkansas
Opinion delivered December 9, 2004

*William E. Keadle*, Revenue Legal Counsel, for appellant.

*Nichols & Campbell, P.A.*, by: *H. Gregory Campbell* and *Mark W. Nichols*, for appellees.

JIM HANNAH, Justice. The Arkansas Department of Finance & Administration (DF&A) appeals a decision of the Pulaski County Circuit Court entered after this case was remanded to the circuit court in *Weiss v. McFadden*, 356 Ark. 123, 148 S.W.3d 248 (2004) (*McFadden II*). DF&A argues that the circuit court erred in ordering a "front-end loaded" refund method for class members who retired after the lawsuit was filed in 1999, and that the circuit court erred in ordering a refund method for taxes paid prior to the lawsuit that was different than the refund method to be used for taxes paid after the lawsuit was filed.

The appeal in *McFadden II* involved assertions by DF&A that the refund method fashioned by the circuit court was in error. Under the doctrine of law of the case, this same issue may not be raised again on the present appeal. Further, the decision of the circuit court to use a different refund method for taxes paid prior to filing the lawsuit in 1999 is not clearly erroneous. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1) and (7).

*Facts*

This case concerns an attempt by DF&A to tax return of capital as if it were income. In *Weiss v. McFadden*, 353 Ark. 868, 120 S.W.3d 545 (2003) (*McFadden I*), this court held that the return to a retiree of after-tax contributions made to a retirement plan is not income subject to income tax because it constitutes return of capital rather than income. We further held that an income tax levied against after-tax contributions constituted an *ad valorem* tax in violation of Amendment 47 of the Arkansas Constitution. Therefore, the tax constituted an illegal exaction under article 16, section 13 of the Arkansas Constitution.

In *McFadden II*, this court held that the circuit court erred in failing to apply the voluntary payment rule in formulating its refund plan to benefits paid to retirees prior to the filing of the complaint in this case in 1999. This court further held that the circuit court did not err in refusing to apply 26 U.S.C. § 72 in fashioning the remedy in this case. The case was remanded for application of the voluntary payment rule.

*Standard of Review*

This case was tried with the circuit court sitting as the trier of fact. The standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Farm Credit Midsouth, PCA v. Reece Contractors, Inc.*, 359 Ark. 267, 196 S.W.3d 488 (2004). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Farm Credit, supra.* Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.* At issue on this case is whether the circuit court erred in fashioning a remedy. In *Lotz v. Cromer*, 317 Ark. 250, 253, 878 S.W.2d 367 (1994), this court

correctly stated that "[i]n fashioning a remedy, a Chancellor has broad power, limited only to the extent that the remedy must be reasonable and justified by the proof."

## Law of the Case

In *Cadillac Cowboy, Inc. v. Jackson*, 347 Ark. 963, 69 S.W.3d 383 (2002), this court discussed law of the case and stated:

> The venerable doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided on appeal. The doctrine serves to effectuate efficiency and finality in the judicial process. *Frazier v. Fortenberry*, 5 Ark. 200 (1843); *see also*, 5 AM. JUR. 2d *Appellate Review* § 605 (1995). We have said the following with regard to the law-of-the-case doctrine:
>
> > The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998). On the second appeal, the decision of the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented. *Griffin v. First Nat'l Bank*, 318 Ark. 848, 888 S.W.2d 306 (1994).
>
> *Clemmons v. Office of Child Support Enforcement*, 345 Ark. 330, 346, 47 S.W.3d 227, 237 (2001). The rationale for the adherence to a strict application of the rule — the avoidance of the disorder and unpredictability that would follow a departure from the doctrine — has not changed.

*Cadillac Cowboy*, 347 Ark. at 970. The doctrine is conclusive only where the facts on the second appeal are substantially the same as those involved in the prior appeal. *Lake View Sch. Dist. No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002). It does not apply if there is a material change in the facts. *Id.* In the case before us, there is no change of fact with respect to the retirees and their pensions. The only change on the present appeal is the application of the voluntary payment rule.

## Front-End Loaded Method

The issue of whether the circuit court erred in applying a front-end loaded method to taxes paid after filing of the lawsuit

in 1999 was already raised by DF&A in *McFadden II*. In *McFadden II*, this court stated that the appeal concerned "the refund mechanism fashioned by the trial court upon remand of *Weiss I* (*McFadden I*) as well as the issue of the constitutionality of Act 380 of 1991." *McFadden II*, 356 Ark. at 126. This court also stated:

> Both the appellee taxpayers and the DF&A proposed refund mechanisms as a remedy for taxes that had been illegally exacted from the appellees. The trial court opted for the appellees' methodology, which allows retirees to recover the full benefit of their after-tax contributions. The DF&A appeals this ruling, asserting that the trial court erred in (1) refusing to apply the voluntary-payment rule to any illegally-exacted taxes that were paid prior to the filing of the lawsuit in 1999, and (2) refusing to apply 26 U.S.C. § 72, which prorates recovery of after-tax contributions on federal tax returns.

*Id.* Therefore, according to this court in *McFadden II*, DF&A was appealing the circuit court's decision on the refund method and alleged that the circuit court erred in adopting the "appellee's methodology." The "appellee's methodology," as noted in the opinion in *McFadden II,* was the "front-end loaded" method.

After considering the arguments of the parties, this court held in *McFadden II* that with respect to the refund method, "the trial court did not err in refusing to apply 26 U.S.C. § 72 to employment-related retirement plans." Further we held, "Because the trial court erred in refusing to apply the voluntary-payment rule to illegally-exacted taxes paid in the years prior to 1999, we reverse and remand on this point with instructions to fashion a remedy consistent with this opinion." *McFadden II*, 356 Ark. at 131. As the circuit court correctly stated in its May 13, 2004, Order Upon Remand: "The only issue remanded to this court was the application of the voluntary payment rule to illegally exacted taxes paid in years prior to 1999."

### Voluntary Payment Rule

There is no error in the circuit court's application of the voluntary payment rule in this case where the refunds for taxes paid prior to filing the lawsuit in 1999 are handled differently than refunds for taxes paid after the lawsuit was filed. No authority is cited which requires the circuit court to utilize the same methods

for both periods in this case. The circuit court was clearly attempting to exercise equity to assure that retired pensioners receive the refund due within a time frame that provides some reasonable form of actual relief. Some retirees may have passed away since this action was begun almost five years ago, and such retirees have been effectively denied relief.

■ There is no showing that the remedy ordered by the circuit court is unreasonable or not justified by the proof. Upon remand, the circuit court did precisely what it was ordered to do by this court in *McFadden II*. The findings of the circuit court are not clearly erroneous. We find no error and affirm.

DICKEY, C.J., BROWN and THORNTON, JJ., dissent.

R OBERT L. BROWN, Justice, dissenting. It is passing strange that this court is invoking the doctrine of law of the case to prevent our consideration of the front-end loaded method for tax years 1999 – 2002. The reason this is so strange is that in *Weiss v. McFadden*, 356 Ark. 123, 148 S.W.3d 248 (2004) (*McFadden II*), we specifically laid out an alternative to the front-end loaded method for tax years 1999-2002:

> However, there are other equitable ways by which a refund may be effected while still acknowledging the voluntary-payment rule. One such way would be for the appellees to file amended returns for 1999 through 2002, attaching copies of their federal income tax returns. They could adjust their income on the Arkansas returns by the amount of after-tax contributions claimed on their federal returns for those years. In this way, all taxes paid on after-tax contributions received prior to 1999 would be considered voluntarily paid; while, at the same time, the appellees would receive the benefit of a refund of those taxes illegally exacted in 1999-2002 because they were not allowed to recover their after-tax contributions during those years.

*McFadden II*, 356 Ark. at 131, 148 S.W.3d at 253-54. We reversed and remanded for the trial court to "fashion a remedy consistent with our opinion." That language clearly relates to a remedy for the period in question — 1999 through 2002.

Are we saying now we did not mean what we said? Apparently so. We now issue an opinion that says we cannot espouse an alternative procedure to the front-end loaded method to effect the

refund for 1999 through 2002 and we are locked in to the front-end loaded method, even though this court laid out a road map for precisely such an alternative procedure in *McFadden II*. It makes no sense.

Turning to the merits of this appeal, DFA correctly maintains that the trial court found an illegal exaction for tax years 1999 through 2002 and calculated the refund based on contributions made to retirement plans during this period. In other words, total contributions for the four-year period could be deducted against total retirement benefits for 1999. To the extent those contributions exceed 1999 retirement income, the overage would be passed on as a deduction to retirement income for 2000 and so forth. The front-end loaded method, thus, provides a refund remedy even when no tax has been levied on the retirement benefits and no tax has been paid. Again, this is passing strange. Should we be calculating a refund for an illegal tax when it is not known when the benefits resulting from the contributions will be paid, when the tax will be applied, and whether the taxpayer will even receive the benefits?

This brings me back to what this court set out as a proper way to effect the refund in *McFadden II*. We said file an amended return for each year, 1999 through 2002, and claim a deduction against income for after-tax contributions paid out as benefits in each year. Then, claim your refund for the excess tax paid. This procedure provides a refund for taxes that were actually illegally exacted as opposed to an estimated refund based purely on contributions made to a plan. The trial court disregarded our clear direction.

The majority argues that the trial court was trying to *do equity* and allow deductions of as much of the total contributions against retirement income as could be made in the first year and then in successive years. The front-end loaded method certainly favors the taxpayers in permitting deductions for contributions to be taken in one fell swoop, but it confounds our illegal exaction law by permitting deductions against income for retirement benefits not yet received. Most importantly, the front-end loaded method does not tie the refund to after-tax benefits paid out in a given year.

In sum, I question the fairness and reasonableness of hinging the majority opinion on law of the case in light of our specific language in *McFadden II* and then calculating a tax refund based on

after-tax retirement benefits not yet received and which may not be received at all. For these reasons, I respectfully dissent.

DICKEY, C.J., and THORNTON, J., join in this dissent.

RAY THORNTON, Justice, dissenting. Because I believe that the majority misapplies the law-of-the-case doctrine and fails to reach the issues properly before this court, I respectfully dissent.

The majority inconsistently holds that we may not rule on the front-end loaded method in this appeal, claiming such rulings would be barred by the law-of-the-case doctrine while simultaneously approving the trial court's abandonment of the front-end loaded method for contributions returned prior to 1999. The majority also inconsistently allows application of 26 U.S.C. § 72 to pre-1999 returns without making that rule applicable to all returns. The majority's opinion applied the law-of-the-case doctrine. This doctrine prevents a court from reconsidering issues of law or fact that have already been decided on a previous appeal. *Jones v. Double "D" Properties, Inc.*, 357 Ark. 148, 161 S.W.3d 839 (2004). This doctrine serves to effectuate the efficiency and finality of the judicial process and is meant to maintain consistency while avoiding reconsideration of issues once decided during the course of a single, continuing lawsuit. *Jones, supra* (citing *Cadillac Cowboy, Inc. v. Jackson*, 347 Ark. 963, 69 S.W.3d 383 (2002)). An exception, however, to the law-of-the-case doctrine is when there is materially different evidence presented after the issuance of the appellate court's mandate to the trial court. *Wilson v. Wilson*, 301 Ark. 80, 781 S.W.2d 487 (1989).

In this case, subsequent to the decision in *Weiss v. McFadden*, 356 Ark. 123, 148 S.W.3d 248 (2004) (*"McFadden II"*), the trial court held a hearing to take further evidence and preserve the subsequent record for appeal. At this hearing, new testimony was taken concerning the availability of data from the federal government, the methodology of wide-scale refunds, and the nature and ratio of post-tax contributions in retirement accounts under federal law. Quite simply, there was new evidence regarding the very issue that appellants now bring to this court's attention. Specifically, there is now testimony before the trial court that, under federal law, even if a retiree chooses to recover a lump-sum amount of post-tax contributions in the initial payments from their benefit system, the balance still contains post-tax contributions over the life of the retiree. This is directly related to our statement

in *McFadden II, supra* that "either the appellees have received their post-tax contributions or they have not."

There is sufficient new evidence that the record on this appeal is materially different from the previous records, and the issues argued by appellants are squarely within the above-noted exception to the law-of-the-case doctrine. *See, e.g. Wilson, supra.*

Furthermore, the majority relies on the circuit court's decision about what was to be decided on remand. This is error and violative of the mandate rule under our jurisprudence. The mandate rule is the legal principle that a lower court is bound to follow the dictates of a superior court and that the jurisdiction conferred on the trial court upon remand is bounded by the mandate and decision of the superior court. *City of Dover v. A. G. Barton*, 342 Ark. 521, 29 S.W.3d 698 (2000). When we remand with specific instructions, those instructions must be followed as found in both the mandate and opinion. *Id.* A lower court is bound to follow both the letter *and spirit* of the opinion and mandate of the appellate court. *Id.* (emphasis added). In working equity, a trial court should look beyond the mere words of affirmance or reversal and look to the effect of the opinion in proceeding upon remand. *Glover v. Woodhaven Homes, Inc.*, 346 Ark. 397, 57 S.W.3d 211 (2001) (quoting *Kneeland v. American Loan & Trust Co.*, 138 U.S. 509 (1891)).

In the matter under review, I believe that our holding in *McFadden II, supra*, was not followed. Appellees proposed a remedy that ignored the effect of our ruling, and that remedy was accepted by the trial court. The mandate rule should require us to clarify that holding now. In examining both the mandate and opinion of *McFadden II*, it is clear that we did not approve of the trial court's remedy. We found that the remedy did not apply the voluntary-payment rule to any of the taxes in the case when illegal exaction jurisprudence requires the application of the voluntary-payment rule to taxes paid before the illegal-exaction suit was filed. *See e.g.*, *McFadden II, supra.* We remanded based on this issue, but only after noting that the appellees' suggested remedy was not viable. Furthermore, we stated that there were equitable solutions to this remedial quagmire and gave one example that allowed a recovery of income tax paid on the portion of benefits that were the return of post-tax contributions and took into account the voluntary-payment rule. In *Weiss v. McFadden*, 353 Ark. 868, 120 S.W.3d 545 (2003) ("*McFadden I*"), we noted that the parties agreed that some portion of the benefits paid to the retirees was post-tax contribu-

tions being returned. If the trial court did not follow the letter and spirit of our previous opinions, the mandate rule is not a bar to adjudicating the issues. Our instruction to fashion a remedy providing for a harmonious treatment of federal and state tax laws was not followed by the trial court.[1]

I believe that it was reversible error to reject our conclusion in *McFadden II* that the state-tax treatment must be harmonious with that of federal taxation. Accordingly, I would reverse and remand this case with instructions. to the trial court to craft a remedy that is harmonious as to the state and federal treatment of the post-tax contribution corpus in the retirees annuity accounts.

For the forgoing reasons, I respectfully dissent. I am authorized to state that Chief Justice DICKEY and Justice BROWN join in this dissent.

---

[1] I note that appellees have discovered and seek to call to the attention of the court a statutory provision approving the use of 26 U.S.C. § 72. This statute was not cited to us in the original appeal and the law of the case prevents us from considering it now.